**CARTERET SAVINGS BANK, F.A., Plaintiff,**

v.

**Louis G. SHUSHAN, et al., Defendants.**

**Civ. A. No. 88–5178.**

United States District Court,
D. New Jersey.

Oct. 10, 1989.

As Amended Oct. 13, 1989.

---

Gerald A. Liloia, Anthony J. Sylvester, and Andrew M. Lankler, Riker, Danzig, Scherer & Hyland, Morristown, N.J., for plaintiff.

Francis X. Crahay, Charles F. Brennan, and Joseph K. Cobuzio, Tompkins, McGuire & Wachenfeld, Newark, N.J., for defendants.

## OPINION AND ORDER

POLITAN, District Judge.

This matter comes before the Court on plaintiff's motion for reconsideration, modification or certification for appeal of this Court's bench opinion of June 28, 1989. On that date, the Court heard oral argument and issued an Order dismissing this matter for lack of personal jurisdiction and transferring it, pursuant to 28 U.S.C.A. 1406(a), to the United States District Court for the Eastern District of Louisiana. For the reasons outlined herein, plaintiff's motion for reconsideration is DENIED.

A motion for reconsideration must set forth "the matters or controlling decisions which counsel believes the court has overlooked." General Rule 12I. Plaintiff, Carteret Savings Bank, P.A. ("Carteret") has not fulfilled this burden. Rather, they have presented a recapitulation of the cases and arguments considered by this Court before rendering its original decision.

The facts of this dispute are uncontested and clear. Carteret purposefully and without any solicitation, engaged the Louisiana law firm of Shushan, Meyer, Jackson, McPherson and Herzog to act as local counsel for Carteret in granting a loan on a Louisiana construction project known as Three Lakeway. As local counsel, the firm prepared all the relevant documents for the loan in Louisiana. On May 29, 1985, Louis Shushan ("Shushan") came to New Jersey to meet with Carteret to review documents relevant to the loan.

The loan was finalized and a closing was held in Louisiana on June 12, 1985. In connection with the Three Lakeway loan, Carteret entered into a Contractor's Consent Agreement with the project's general contractor, Algernon Blair. This Agreement provided that in the event of any default by the Borrower, Carteret agreed to pay Blair for any work done prior to the default. The Agreement also provided that the laws of Louisiana would govern any questions related to the Consent Agreement.

The borrower subsequently defaulted and, in an action litigated in the United States District Court for the Eastern District of Louisiana, Carteret was found liable to Algernon Blair and a judgment was entered against Carteret for approximately $1.5 million dollars.

Carteret then commenced this action in New Jersey alleging that Shushan fraudulently and surreptitiously inserted the default provision in the consent agreement to benefit his longtime client Algernon Blair. Carteret relies on Shushan's trip to New Jersey, allegedly in furtherance of his fraudulent scheme, as the significant New Jersey contact allowing this Court to exercise jurisdiction over Shushan. The facts and law, however, do not support this conclusion.

This Court can exercise jurisdiction over a nonresident of the state in which the Court sits only to "the extent authorized by the laws of that state." *See Provident National Bank v. California Federal Savings & Loan Association*, 819 F.2d 434, 436 (3d Cir.1987). In New Jersey, courts are permitted to exercise jurisdiction to the outer limits of due process. *See* New Jersey Civil Practice Rules, R. 4:4–4(c). Jurisdiction is therefore permitted to the fullest extent under the Constitution. *See Avdel Corp. v. Mecure*, 58 N.J. 264, 268, 277 A.2d 207 (1971). The basic jurisdiction standard outlined by the Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), is that the exercise of personal jurisdiction comports with due process if the non-resident defendant has such contacts with the forum state such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." This standard has been continually refined and clarified by the Court.

In *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984), the Court distinguished the exercise of specific jurisdiction from general jurisdiction. When a particular cause of action arises out of the defendant's activities in the forum state specific jurisdiction is appropriate. *Provident Nat. Bank v. Cal. Fed Sav. v. Loan Ass'n.*, 819 F.2d 434, 437 (3rd Cir.1987). For a court to exercise general jurisdiction, the defendant must have significantly greater "continuous and systematic" contacts with the forum state. In such a case, the cause of action does not have to arise out of the defendant's forum related activities. The threshold for exercising general jurisdiction is, therefore, greater than the exercise of specific jurisdiction.

Modern jurisdiction analysis also focuses on a determination of whether the defendant purposefully established a substantial connection with the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–475, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1984). In *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Court outlined the central elements of this standard:

> [t]he unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum

state. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

*Id.* 357 U.S. at 253, 78 S.Ct. at 1239.

In *Burger King,* the Court illustrated various factual scenarios under which jurisdiction would be proper:

> [w]here the defendant 'deliberately' has engaged in significant activities within a state, *Keeton v. Hustler Magazine, Inc., supra,* [465 U.S. 770] at 781 [104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984)] or has created 'continuing obligations' between himself and residents of the forum, *Travelers Health Assn. v. Virginia,* 339 U.S. [643] at 648, [70 S.Ct. 927, 930, 94 L.Ed. 1154 (1950)] he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King,* 471 U.S. at 475–476, 105 S.Ct. at 2183–84.

■ In the case at bar, it is clear that the defendants do not have sufficient contacts with New Jersey for this Court to exercise general jurisdiction. The defendants neither transact nor solicit business in New Jersey. This litigation concerns a loan for a construction project in Louisiana. The only New Jersey contact is a single trip taken by Louis Shushan to New Jersey in preparation for the closing in New Orleans. This Court cannot find from this single contact that Shushan purposefully availed himself of the protections of New Jersey's laws or could have reasonably expected to litigate any disputes concerning the Three Lakeway project in New Jersey.

■ Carteret must therefore demonstrate that this Court can exercise specific jurisdiction by showing that their cause of action directly relates to the defendants' contacts with New Jersey and that the defendants voluntarily and purposefully established such contacts with New Jersey. Carteret has made no such showing. They place great reliance on the fact that Shushan attended a meeting in New Jersey and that his allegedly fraudulent scheme had a foreseeable effect in New Jersey. Neither factor, however, establishes that Shushan purposefully established contacts with New Jersey or that Carteret's cause of action directly relates to Shushan's single New Jersey contact. Mr. Shushan attended the meeting in Roseland only because Carteret solicited his services in Louisiana. Further, it is well established that the mere foreseeability of causing injury in another state is not a sufficient basis for exercising personal jurisdiction over a defendant. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Therefore, the fact that Shushan's activities may have effected Carteret in New Jersey is not dispositive.

Carteret further asserts that Shushan committed an intentional tort in New Jersey during the meeting on May 29, 1985. This is factually incorrect. The closing documents were prepared in Louisiana and it is therefore in Louisiana, if anywhere, that Shushan planned and committed his negligent or tortious acts. Shushan's alleged fraud was a paper fraud, hatched and executed in Louisiana.[1]

The cases relied upon by Carteret, particularly *Lebel v. Everglades Marina,* 115 N.J. 317, 558 A.2d 1252 (1989), are clearly distinguishable. In *Lebel,* the defendant purposefully solicited the plaintiff's business in New Jersey. The Court wrote "this is not a situation in which the plaintiff unilaterally brought about the contacts." *Id.* 558 A.2d at 1255. That, however, is the situation in this case. Carteret contacted the Shushan firm to handle a wholly Louisiana transaction. Shushan did nothing to voluntarily initiate contacts with New Jer-

---

1. Moreover, it is significant to note that there is no evidence or suggestion that the allegedly fraudulent provision of the contract was specifically discussed at the meeting in New Jersey.

709

sey. The single trip to New Jersey, given the vast number of meaningful contacts with Louisiana, is not a sufficient purposeful act for this Court to base a finding of jurisdiction. To do so would be fundamentally unfair and a violation of the defendants' "individual liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'" *Burger King*, 471 U.S. at 471–472, 105 S.Ct. at 2181–82 (*quoting International Shoe*, 326 U.S. at 319, 66 S.Ct. at 159).

Carteret also argues that this Court is powerless to transfer this matter under § 1406(a) because venue is proper in New Jersey pursuant to 28 U.S.C. § 1391(a). This analysis rests on an incorrect narrow interpretation of § 1406(a), unsupported by the clear language of the statute or the Supreme Court's expansive construction of this provision in *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). In *Goldlawr*, the Court upheld the application of § 1406(a) in a case where venue was improper and the transferring court lacked personal jurisdiction over the defendants. The Court wrote:

> The section is thus in accord with the general purpose which has prompted many of the procedural changes of the past few years that of removing whatever obstacles may impede an expeditious, orderly adjudication of cases and controversies on their merits.

*Id.* at 466, 82 S.Ct. at 916.

Although the majority opinion did not specifically address the issue presented by Carteret, namely, the application of § 1406(a) when venue is technically correct in the transferring district, the decision evidenced a clear intention to avoid "time consuming and justice defeating technicalities." *Id.* at 467, 82 S.Ct. at 916; *quoting Internatio–Rotterdam, Inc. v. Thamsen*, 218 F.2d 514, 517 (4th Cir.1955). It would defeat this objective to limit § 1406(a) as Carteret urges.

Moreover, the statute itself vests this Court with sufficient power to transfer this case, whether venue is characterized as correct or incorrect under § 1391(a). 28 U.S.C. § 1406(a) provides:

> The District Court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

There are two operative principles in this provision that must be satisfied. First, is the action in the "wrong division or district" and secondly, will the "interest of justice" be served.

§ 1406(a) uses the term "wrong division or district," it does not specifically state wrong venue. This is a vital distinction because a district can be wrong in a variety of senses, venue being only one of them. This Court therefore holds, as the Fifth Circuit did in *Dubin v. United States*, 380 F.2d 813, 815 (5th Cir.1967), that wrong division refers to any obstacle which prevents an orderly, expeditious, adjudication of a case on its merits. Lack of personal jurisdiction, in an otherwise correct venue, is such an obstacle, thus triggering the application of the statute under the first principle.

As to the second factor, the Supreme Court recognized in *Goldlawr* that under certain circumstances it would be inequitable to dismiss a law suit solely because the plaintiff made a miscalculation on an uncertain and "elusive fact of the kind upon which venue provisions often turn." *Id.* 369 U.S. at 466, 82 S.Ct. at 915. The Court found the "interest of justice" required transfer particularly when if the matter was dismissed the plaintiff would lose a substantial part of his cause of action due to the statute of limitations. A contrary holding said the Court, would frustrate the "enlightened" congressional objective behind § 1406(a).

This Court finds that the same analysis must be applied to a plaintiff who has made a proper calculation as to the question of venue, but who has made a reasonable miscalculation on the similarly

elusive question of personal jurisdiction.[2] Fundamental concepts of fair play and substantial justice require this result. A litigant who has commenced a timely action within the federal system should not be penalized with the loss of that cause of action solely because he has made a reasonable error as to the existence of personal jurisdiction.[3]

For the foregoing reasons, the transfer of this action under § 1406(a) is confirmed. An opposite conclusion would elevate form and technicality over substance and equity.

Plaintiff's motion for reconsideration is, therefore, DENIED in its entirety.

SO ORDERED.

**2.** This result eliminates the incongruity addressed by Justice Harlan in his dissent in *Goldlawr,* 369 U.S. at 468, 82 S.Ct. at 916.

**3.** The same result could be reached if the court transferred this matter pursuant to 28 U.S.C. § 1404(a). *United States v. Berkowitz,* 328 F.2d 358, 361 (3rd Cir.1964), *cert. denied,* 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964).