Ronald A. PANNA, et al., Plaintiffs,

v.

**FIRSTRUST SAVINGS BANK, Neil I. Rodin, North Atlantic Investment Corporation, Rodin Realty Investment Corporation, Joseph Dennis Pasquarella & Co., Joseph Dennis Pasquarella, Rodin Management Inc., Rodin Enterprises Inc., Fifty–Three Hundred Boardwalk, Inc., Ivan J. Krouk, Regional Realty Investments I, Inc., Sanders D. Newman, Blank, Rome, Comisky & McCauley, and Laventhol & Horwath, Defendants.**

Civ. No. 89–3732 (SSB).

United States District Court,
D. New Jersey.

March 20, 1991.

acting on behalf of management. The burden of showing improper purpose is on defendant.

Steven M. Coren, Kaufman, Coren & Ress, Philadelphia, Pa., Manya L. Kamerling, Haddonfield, N.J., for plaintiffs.

Edward S. Wardell, John F. Stoviak, Saul, Ewing, Remick & Saul, Voorhees, N.J., for defendant Firstrust Sav. Bank.

Jeffrey S. Batoff, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for defendant Rodin Realty.

Mark Schwartz, Kenney & Kearney, Cherry Hill, N.J., for defendant Laventhol & Horwath.

William B. Hildebrand, Slimm, Dash & Goldberg, Westmont, N.J., for defendant Pasquarella & Co.

Edward Toole, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for defendant Joseph Dennis Pasquarella.

Justin P. Walder, Walder, Sondak, Berkeley & Brogan, P.A., Roseland, N.J., for defendant Blank, Rome, Comisky & McCauley.

## OPINION

BROTMAN, District Judge.

Plaintiffs have requested the court to reconsider its decision of October 30, 1990 granting defendants' motion to dismiss plaintiffs' Racketeer Influenced and Corrupt Organizations Act (RICO) claims on statute of limitations grounds.[1] *See Panna v. Firstrust,* 749 F.Supp. 1372 (D.N.J. 1990). The court has reconsidered that decision and, after closer examination, finds that plaintiffs' complaint alleges a pattern of racketeering activity of which plaintiffs knew within the four-year limitations period. Therefore, the Third Circuit's ruling in *Keystone Ins. Co. v. Houghton,* 863 F.2d 1125 (1988) compels the court to vacate its previous order and deny defendants' motion to dismiss.

## I. BACKGROUND AND PROCEDURAL HISTORY [2]

Plaintiffs, limited partners of Oceanaire Associates, filed a complaint on September 7, 1989 alleging that defendant Firstrust, with the participation of other defendants, initiated a criminal plan to defraud Oceanaire's investors, Firstrust's depositors, the Federal Deposit Insurance Corporation (FDIC) and the general public for the purpose of accomplishing its conversion from a mutual savings and loan institution to a Pennsylvania stock savings bank. The complaint alleges that on March 16, 1981, Firstrust loaned $3,800,000 to defendant Fifty–Three Hundred Boardwalk, Inc. (Fifty–Three Hundred) to finance the proposed sale of the Oceanaire Apartments in Ventnor, New Jersey as individual condominium units. When Fifty–Three Hundred failed to market the condominiums successfully and defaulted on its loan a year later, Firstrust chose not to foreclose on the property. Instead, in order to avoid disclosing the bad loan to the general public at the same time it was attempting to convert to a stock savings bank, Firstrust allegedly initiated a fraudulent syndication of the property with the participation of co-defendants.

Plaintiffs are the unsuspecting limited partners who, interested in investing in a high-risk tax shelter like the one described in the Offering Memorandum, collectively purchased 20 units at $50,000 per unit, or $70,000 per unit on an installment basis. This investment having been made on August 31, 1984, the court found that plaintiffs did not bring this lawsuit within the four-year limitations period judicially imposed by the Supreme Court in *Agency Holding Corp. v. Malley–Duff & Assocs.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) and later applied by the Third Circuit in *Keystone Ins. Co. v. Houghton,* 863 F.2d 1125 (1988).[3] For reasons more fully set forth in this court's earlier opinion, the court found that plaintiffs' RICO claim accrued on the date of their investment on August 31, 1984. Given the substantial warnings and disclosures in the Offering Memorandum, plaintiffs knew or reasonably should have known (1) the elements of their civil RICO cause of action and (2) of their last RICO injury within four years of the date of their investment. *Panna,* 749 F.Supp. at 1378–81. The court further concluded that the last predicate act alleged on the face of plaintiffs' complaint occurred in

---

1. Plaintiffs do not contest this court's dismissal of their federal securities claims on statute of limitations grounds and that portion of the decision remains undisturbed.

2. A fuller description of plaintiffs' complaint may be found at 749 F.Supp. at 1374–76.

3. The *Keystone* Court announced the following limitations rule:

 [T]he limitations period for a civil RICO claim runs from the date the plaintiff knew or should have known that the elements of the civil RICO cause of action existed unless, as a part of the same pattern of racketeering activity, there is further injury to the plaintiff or further predicate acts occur, in which case the accrual period shall run from the time when the plaintiff knew or should have known of the last injury or the last predicate act which is part of the same pattern of racketeering. The last predicate act need not have resulted in injury to the plaintiff but must be part of the same pattern. If the complaint was filed within four years of the last injury or the last predicate act, the plaintiff may recover for injuries caused by other predicate acts which occurred outside an earlier limitations period but which are part of the same "pattern."
 *Keystone* at 1130–31.

July 1985, when Firstrust allegedly filed "false and misleading Proxy Statements with the FDIC ... in connection with Firstrust's conversion to a stock company," Complaint at ¶ 92(a). *Id.* at 1381. The court rejected plaintiffs' suggestion that the court find Firstrust's mortgage foreclosure action or Oceanaire's bankruptcy filing predicate acts falling within the limitations period. *Id.* at 1381–82. Finding no predicate acts within the limitations period, the court dismissed plaintiffs' RICO claim as time-barred.

Plaintiffs then timely filed this motion for reconsideration, challenging this court's findings on several points: 1) Plaintiffs have continued to experience injury from their investments in Oceanaire through ongoing installment payments falling within the limitations period; 2) plaintiffs' damages are distinguishable from those experienced by the plaintiffs in *Fleischhauer v. Feltner*, 879 F.2d 1290 (6th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1122, 107 L.Ed.2d 1029 (1990), which held expectancy damages not recoverable where plaintiffs were fully informed of the risks associated with the investment; 3) plaintiffs' discovery of their cause of action is a factual matter exclusively reserved to the jury; and 4) further predicate acts falling within the limitations period reasonably can be inferred from the nature of the scheme.[4] This last point has required the court to reassess its concept of the nature of the pattern alleged, leading it to deny defendants' motion to dismiss on grounds distinct from those raised in plaintiffs' motion to reconsider.

## II. DISCUSSION

### A. *Motion for Reconsideration Standard:*

■■■■ District Court of New Jersey Rule 12(I) provides that a motion for reconsideration shall be served with "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." A party seeking reconsideration must show more than a disagreement with the court's decision, and "recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *Carteret Savings Bank, F.A. v. Shushan*, 721 F.Supp. 705, 709 (D.N.J.1989). *See also Egloff v. New Jersey Air National Guard*, 684 F.Supp. 1275, 1279 (D.N.J.1988). The only proper ground for granting a motion for reconsideration, therefore, is that the matters or decisions overlooked, if considered by the court, "might reasonably have altered the result reached...." *New York Guardian Mortgage Corp. v. Cleland*, 473 F.Supp. 409, 420 (S.D.N.Y.1979); *U.S. v. International Business Machines Corp.*, 79 F.R.D. 412, 414 (S.D.N.Y.1978). There is nothing to prevent the court from examining new facts or evidence that might lead to a different result if considered by the court. *See In the Matter of Arbitration between Dow Jones & Co., Inc. v. Irwin & Leighton, Inc.*, 1990 WL 8733, 1990 U.S.Dist. LEXIS 1068 (D.N.J. Civ. No. 89–3641, Jan. 29, 1990); *Efrain Maldonado v. Rusty Lucca*, 636 F.Supp. 621 (D.N.J.1986).

### B. *Analysis of the Pattern Alleged in Plaintiffs' Complaint:*

The court's reconsideration of its opinion and of plaintiffs' RICO claims has led it to a different conclusion about the pattern plaintiffs allege and at what point the court may find that plaintiffs knew or should have known about their RICO cause of action. In its previous opinion, this court proceeded to apply the *Keystone* limitations rule to injuries and predicate acts flowing from *a* pattern of racketeering activities, namely that pattern composed of predicate acts of wire and mail fraud in connection with the offering and sale of partnership interests in Oceanaire Associ-

---

**4.** Plaintiffs also seek leave to amend their complaint to plead additional predicate acts as well as claims under state securities laws. The former request is dismissed as unnecessary in light of the court's ruling. The latter request is denied for failure to comply with local Rule 12(H) ("Upon filing of a motion for leave to file an amended complaint ... the movant *shall* attach to the motion a copy of the proposed pleading or amendments").

ates. In analyzing that particular set of predicate acts, the court found that at least some of those predicate acts associated with selling interests in the Oceanaire partnership were sufficiently related and continuous to form a pattern of which plaintiffs knew or should have known. The misstep, however, was to reach that conclusion without examining the larger pattern alleged on the face of plaintiffs' complaint. *See Keystone,* 863 F.2d at 1135 (for statute of limitations purposes, court should refer to the pattern upon which plaintiff relied in bringing its claim).

In fact, the particular "pattern" analyzed by the court is but a sub-pattern of the larger interrelated pattern actually alleged in plaintiffs' complaint. For example, at ¶¶ 48 and 49, plaintiffs state, "In connection with Firstrust's conversion to a stock company, Firstrust was intending to sell securities to the public, and was therefore required to prepare a proxy statement and other documents disclosing in-depth financial information concerning Firstrust, ..." including financial information about its problem loans and bad debts. Paragraph 50 states, "Rather than initiate mortgage foreclosure proceedings in connection with the Oceanaire Apartments and the bad loan of Fifty–Three Hundred—which would have been required to be disclosed in connection with Firstrust's efforts to convert to a stock company—Firstrust put into motion a fraudulent scheme designed to avoid disclosure and to get this problem loan off its books."

■ Thus, the pattern presented on the face of plaintiffs' complaint involves a sub-scheme, which allegedly defrauded these plaintiffs, as part of a larger scheme to defraud the public into buying Firstrust securities at a later time. Thus, at ¶ 92(a)-(m), plaintiffs list a series of predicate acts "including, but not limited to" (a) Firstrust's filing of false and misleading Proxy Statements with the FDIC in at least

1984 and in July, 1985 in connection with Firstrust's conversion to a stock company and (b) Firstrust's failure to disclose the bad Fifty–Three Hundred loan when selling securities to the general public beginning in 1984 and thereafter. The remaining predicate acts alleged by plaintiffs involve the marketing of the Oceanaire syndication. Those predicate acts in themselves form *a* pattern, but it is not the same comprehensive pattern plaintiffs allege in their complaint. In effect, plaintiffs have alleged that, but for Firstrust's plan to convert to a stock bank without disclosing bad loans, the Oceanaire partnership never would have been created and they would not have invested in "essentially worthless securities." [5]

■ An argument raised in defendants' motion to dismiss but not explicitly discussed in this court's previous opinion is whether such a pattern of racketeering activities meets the definition enunciated by the Supreme Court in *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). "To prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." 109 S.Ct. at 2901. The Court also suggested that the legislative history on this issue was enlightening: "[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985).

The Supreme Court in *H.J. Inc.* elaborated on the continuity prong of the pattern test, stating, "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of

---

**5.** Defendants have also challenged plaintiffs' standing to bring a RICO claim based on a pattern that includes predicate acts injuring not themselves but "the general public." Such a challenge must lose given the Third Circuit's instruction in *Keystone* that "[i]n a civil RICO

action the injury which confers standing need not flow from the pattern of racketeering itself but must flow from the commission of the predicate act. *See Kearny v. Hudson Meadows Urban Renewal Corp.,* 829 F.2d 1263, 1268 (3d Cir.1987)."

related predicates extending over a substantial period of time." 109 S.Ct. at 2902. The Court also commented that "proof that a RICO defendant has been involved in multiple criminal schemes would certainly be highly relevant to the inquiry into the continuity of defendant's racketeering activity." *Id.* at 2901. The Third Circuit has stated that the court must inquire into the extent of the racketeering activity based on the circumstances of the particular case. *Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36 (3d Cir.1987). Above all, the court must take a flexible approach in reaching a determination of whether a pattern exists. *H.J. Inc.,* 109 S.Ct. at 2900.

Based on the standards discussed above, the court finds that the pattern of predicate acts plaintiffs allege meets the test of "continuity plus relationship." The multiple schemes—one to defraud plaintiffs into purchasing partnership interests, the other to defraud the public into buying Firstrust stock—are related in purpose by the fact that the former scheme was allegedly concocted for the purpose of achieving Firstrust's goal of concealing the bad Fifty–Three Hundred loan from the public. The method and results of both schemes are the same—Firstrust fraudulently conceals the problem loan, leading plaintiffs to buy devalued partnership interests in Oceanaire and the public to buy devalued Firstrust stock. Although the victims of each scheme are different,[6] some of the participants are the same and shared in the benefits. Both schemes are characterized by Firstrust's alleged involvement as a major participant who set them both in motion. Since the two patterns are related, their respective predicate acts must be related as well.

Accepting the allegations supporting these common characteristics as true, as the court must on a motion to dismiss, the court finds that the thirteen predicate acts alleged are "ordered" or "arranged" in a RICO pattern. *See H.J. Inc.,* 109 S.Ct. at 2900. Furthermore, the predicate acts occurred over a substantial period of time (over one year) threatening future criminal activity in order to accomplish its ultimate purpose—selling devalued Firstrust stock.

C. *Application of Keystone to the Pattern Alleged:*

 With this more inclusive picture of the RICO pattern now in mind, the court must determine when plaintiffs' RICO claim accrued. The *Keystone* discovery rule pins accrual at "the date plaintiffs knew or should have known that the elements of the civil RICO cause of action existed...." 863 F.2d at 1130–31. Thus, the *Keystone* rule must be applied individually to: the pattern of racketeering, the enterprise, the effect on interstate commerce and the injury elements of the civil RICO cause of action.

 As to the pattern element, there is nothing in the meager record outside the complaint to indicate when plaintiffs knew or should have known that the pattern alleged in their complaint existed. The only statement by plaintiffs is that they were not aware and "by the exercise of reasonable diligence could not have become aware of the fraudulent and other wrongful conduct ... until on or about March 21, 1989, when they engaged counsel to investigate the underlying transactions." Complaint at ¶ 84. This court's earlier opinion imputed to plaintiffs their constructive knowledge of at least some predicate acts as of the date of their investment, and would do so again if the pattern alleged in the complaint was so limited.[7] However, mindful

---

**6.** In *Keystone,* plaintiff was not injured by every predicate act that made up the pattern of racketeering activities alleged in the complaint. Nevertheless, for purposes of RICO claim accrual, the court found that plaintiff was not time-barred since the last predicate act, which did not injure plaintiff, was part of the pattern that injured plaintiff and fell within the limitations period. Likewise, for purposes of RICO standing, courts have found that a plaintiff need not

be injured by every predicate act. *See Sedima,* 473 U.S. at 495, 105 S.Ct. at 3284; *Town of Kearny v. Hudson Meadows Urban Renewal,* 829 F.2d 1263, 1268 (3d Cir.1987); *Marshall & Ilsley Trust Co. v. Pate,* 819 F.2d 806 (7th Cir.1987).

**7.** Had plaintiffs alleged a RICO pattern limited to wire and mail fraud based on certain alleged omissions and misrepresentations in the Offering Memorandum, the court would have af-

of its obligation to accept plaintiffs' reasonable allegations as true and without the benefit of the Offering Memorandum to impute to plaintiffs their knowledge of the overall pattern they allege, the court is bound to accept plaintiffs' assertion of discovery. Their RICO claims, therefore, are timely, the complaint being filed on September 7, 1989.

In reinstating plaintiffs' RICO claims, the court acknowledges that the result comports with Congress' mandate that RICO "shall be liberally construed to effectuate its remedial purpose." Organized Crime Control Act, Pub.L. No. 91–452 § 904(a), 84 Stat. 942, 947 (1970) (codified at 18 U.S.C. § 1961 note (1982)). The Supreme Court and the Third Circuit have relied on this language "to construe liberally RICO *provisions* as well as RICO as a whole." *See Sedima*, 473 U.S. at 498, 105 S.Ct. at 3286; *Keystone* at 1128 and cases cited at n. 3.

## III. CONCLUSION

The court has reconsidered its decision granting defendants' motion to dismiss plaintiffs' RICO claims and has concluded

firmed its decision to dismiss their RICO claims. Plaintiffs argue that the court may never grant a 12(b)(6) motion to dismiss on statute of limitations grounds because the court must take as true plaintiffs' statement that it did not and could not become aware of defendants' wrongful conduct until March 21, 1989, when they engaged counsel to investigate. Plaintiffs point to a number of cases that hold that when a plaintiff discovered or should have discovered a cause of action for statute of limitations purposes is a fact question to be decided by the jury. *See, e.g., Cipollone v. Liggett Group, Inc.*, 893 F.2d 541 (3rd Cir.1990); *Goodman v. Mead Johnson & Company*, 534 F.2d 566 (3rd Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). This rule, however, is not as universal as plaintiff claims. For example, in *Van Buskirk v. Carey Canadian Mines*, 760 F.2d 481, 498 (3rd Cir.1985), a case plaintiffs cite in support of their position, the court stated, "[s]ince the applicability of the statute of limitations *usually* involves questions of fact for the jury, defendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred" (emphasis added). Plaintiffs have failed to point to any matter or decision this court may have overlooked in concluding that defendants met that heavy burden.

that the complete pattern plaintiffs allege in their complaint, rather than the sub-pattern of predicate acts the court found previously, is the proper reference for analyzing when plaintiffs knew or should have known of their RICO claim. Since the court must accept as true plaintiffs' statement that they did not and reasonably could not have known of the complete pattern until March 1989, their RICO claims are timely. Therefore, the court vacates its October 30, 1990 opinion and order only to the extent it dismisses plaintiffs' RICO claims. The court will deny defendants' motion to dismiss *in toto*, as the remaining points raised in their collective briefs are meritless. An appropriate order will be entered.

## ORDER

This matter having come before the court on plaintiffs' motion to reconsider this court's October 30, 1990 decision dismissing plaintiffs' RICO claims as time-barred, *see Panna v. Firstrust*, 749 F.Supp. 1372 (D.N.J.1990); and

The court having reconsidered its decision and for the reasons set forth in the opinion accompanying this order;

The court is further strengthened in reaching that conclusion by the fact that plaintiffs attached a 110–page Offering Memorandum to their complaint. Rule 10(c) of the Federal Rules of Civil Procedure states that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Defendants rightly point out that the court may freely examine the substance of this exhibit in gauging "the existence of a claim for relief or a defense on a motion to dismiss for insufficiency." *Rose v. Bartle*, 871 F.2d 331, 339–40 n. 3 (3rd Cir.1989), *quoting* 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1327, at 765 (1990). Plaintiffs may disagree with the court's conclusion that at least some of the misrepresentations and omissions of which they complain were *not* in fact misrepresented or omitted, as evidenced by the Offering Memorandum, but "when a disparity exists between the written instruments annexed to the pleadings and the allegations in the pleadings, the written instrument will control." 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1327, at 767 (1990). *See Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812–15 (3rd Cir.1990).

IT IS this 20th day of March, 1991 hereby

ORDERED that the court's October 30, 1990 opinion and order in the above-captioned case is VACATED to the extent it dismissed plaintiffs' RICO claims;

FURTHER ORDERED that defendants' motion to dismiss plaintiffs' RICO claims is DENIED WITH PREJUDICE;

FURTHER ORDERED that plaintiffs' motion for leave to amend is DISMISSED WITHOUT PREJUDICE.