Harry A. ANDERS et al., Plaintiffs,

v.

FPA CORPORATION et al., Defendants.

Howard AGNEW et al., Plaintiffs,

v.

A.P. ORLEANS, INC. et al., Defendants.

Brenda CASH et al., Plaintiffs,

v.

FPA CORPORATION et al., Defendants.

Civil A. Nos. 93–2830, 93–
4567 and 93–4890.

United States District Court,
D. New Jersey.

Feb. 9, 1995.

Paul G. Shapiro, Cohen, Shapiro, Polisher, Shiekman and Cohen, Lawrenceville, New Jersey, Richard G. Tuttle, Anderson Kill Olick & Oshinsky, P.C., Philadelphia, Pennsylvania, Eugene Killian, Jr., Anderson Kill Olick & Oshinsky, P.C., Newark, New Jersey, for defendant/third-party plaintiff FPA Corporation.

Griffith T. Parry, Davis J. Howard, PARRY & HOWARD, P.A., South Orange, New Jersey, for third-party defendant Houston General Insurance Company.

KUGLER, United States Magistrate Judge:

This matter comes before the Court upon motion by Defendants/Third–Party Plaintiffs FPA Corporation, Orleans Corporation, A.P. Orleans, Inc., Orleans Construction Corporation, Orleans Builders and Developers, and Jeffrey P. Orleans, (collectively, "FPA"), to reconsider this Court's Order awarding Third–Party Defendant Houston General Insurance Company ("Houston General") costs, attorney's fees, and expenses of a previously dismissed action pursuant to Fed.R.Civ.P. 41(d). The reason for the Court's imposition of costs and fees upon FPA, set forth in the Letter Opinion of August 25, 1994, was the Court's determination that FPA voluntarily dismissed an action against Houston General in state court and subsequently joined Houston General as a third-party defendant under the same claims in federal court.

## I. *Factual Background*

The facts, as recited in this Court's earlier Letter Opinion, are as follows:

After FPA was sued by three groups of plaintiffs in connection with alleged environmental contamination of a residential project known as "Colts Neck Estates", FPA contacted Houston General, its excess liability carrier. Each of three insurance polices issued by Houston General to FPA covered $15 million excess over $10 million in underlying coverage. The policies would not be triggered unless the amount in any single policy year exceeded $10 million.

FPA advised Houston General of the current and anticipated claims against it in connection with the contamination of Colts Neck Estates. Houston General requested information from FPA and documentation regarding Houston General's analysis of coverage under the insurance policies issued to FPA. FPA did not respond, but commenced an insurance coverage action in the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L–2006–93, with some of its affiliates against Houston General and other umbrella carriers.

Houston General moved to dismiss before the Honorable Robert E. Francis of the Su-

perior Court of New Jersey, on the grounds that its excess insurance policy could not be implicated in the Colts Neck Estates litigation because its coverage trigger was too high. FPA claimed to be in the awkward situation of being asked to help prove the claims against it by providing evidence that the claims were likely to reach the insurance trigger. Houston General made two motions expressly seeking dismissal without prejudice, but FPA resisted both. Nevertheless, FPA failed to submit any evidence as to likely damages.

Counsel for FPA then advised the Superior Court by letter to Judge Francis dated March 31, 1994 that FPA was withdrawing its opposition to both motions to dismiss. FPA requested that the court execute Houston General's proposed order which would have dismissed the action against Houston General without prejudice or costs. Houston General had been advised by FPA that "Houston General will nevertheless be rejoined in this action or in another action in the near future." (Letter dated 3/25/94 from Richard G. Tuttle, FPA counsel, to Judge Francis, copied to Davis J. Howard, counsel for Houston General).

Judge Francis, however, preferred to execute a consent order rather than Houston General's proposed form of order. Counsel for Houston General and FPA subsequently drafted a form of consent order.

Mr. Howard, attorney for Houston General, sent a proposed order to Eugene Killian, counsel for FPA. Mr. Killian edited the consent order and returned it to Mr. Howard, who incorporated the changes and produced a revised consent order on April 13, 1994. On April 15, 1994, he mailed the revised order to Mr. Killian, who indicated he would sign and return it to Mr. Howard to be forwarded to the Superior Court.

Mr. Howard claims that since he did not receive the consent order from Mr. Killian within a reasonable time, he instructed his law clerk to inquire into its whereabouts.

FPA informed the Houston General law clerk that Mr. Killian had signed the consent order and returned it several days earlier. One week later, Mr. Howard still had not received the order. Mr. Howard called Mr. Killian's law firm again and received the same response—that the order had been signed and sent out several days earlier. Houston General contends that order was never received from FPA.

On May 2, 1994, Mr. Howard personally delivered an identical copy of the order to Mr. Killian for his signature. Three days later, on May 5, 1994, that order was executed and entered by the state court. The order is entitled "Consent Order Dismissing Action Without Prejudice," and addresses Houston General's motion to dismiss Plaintiffs' Complaint. The Order acknowledges FPA Corporation "having initially opposed such motions, and thereafter withdrawing said opposition and consenting to the dismissal of Houston General without prejudice," and directs that the Complaint be dismissed without prejudice against Houston General.

On April 28, 1994, seven days before the consent order had been filed in the state court, FPA named Houston General and other state court insurance company defendants as third-party defendants in the action before this Court. Houston General claims that "only FPA and its counsel was aware of this at the time." (Reply memorandum received July 18, 1994).

In July, 1994, Houston General moved before this Court for an award of costs pursuant to Fed.R.Civ.P. 41(d)[1], claiming that FPA voluntarily dismissed its action before the Superior Court against Houston General and then commenced the same action against the same defendant in this Court. This Court granted Houston General's request on August 25, 1994 and ordered that FPA reimburse Houston General for its costs, attorney's fees, and expenses incurred in the state action. Houston General thereafter submit-

---

1. Rule 41(d) provides that:
 If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

ted a bill of costs and counsel fees in an amount over $147,000. FPA now moves for reconsideration of this award of costs and of this Court's determination that the award of costs includes attorney's fees.

## II. *Award of Costs under Rule 41(d)*

FPA moves for reconsideration pursuant to Rule 12I of the General Rules of the United States District Court for the District of New Jersey ("Local Rules"). Rule 12I requires that a motion for reconsideration be served with a "brief setting forth concisely the matters or controlling decisions which counsel believes the Judge or Magistrate has overlooked." Since relief under this rule is to be granted "very sparingly", *Maldonado v. Lucca*, 636 F.Supp. 621, 630 (D.N.J.1986), motions for reconsideration succeed only where "dispositive factual matters or controlling decisions of law" were presented to the court but not considered. *Pelham v. United States*, 661 F.Supp. 1063, 1065 (D.N.J.1987); *Egloff v. New Jersey Air Nat. Guard*, 684 F.Supp. 1275, 1279 (D.N.J.1988) (where no facts or cases were overlooked, motion was denied).

"A party seeking reconsideration must show more than a disagreement with the court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decisions fails to carry the moving party's burden.'" *Panna v. Firstrust Sav. Bank*, 760 F.Supp. 432, 435 (D.N.J.1991) (quoting *Carteret Sav. Bank, F.A. v. Shushan*, 721 F.Supp. 705, 709 (D.N.J.1989)). Moreover, only if the matters overlooked, if considered by the court, might reasonably have resulted in a different conclusion will the court entertain such a motion. *Panna v. Firstrust Sav. Bank*, 760 F.Supp. at 435.

FPA first argues that the Court's decision granting costs under Rule 41(d) was erroneous because it is contrary to the facts established by FPA. FPA's initial opposition to Houston General's motion for costs primarily followed one line of argument—the sequence of events did not fit the language of Rule 41(d), because the state court action technically had not been dismissed before FPA commenced the federal action. The Court rejected this argument and determined that FPA's claim against Houston General in state court was, in substance, a "previously dismissed" action, although formally terminated after the filing of this case. (Opinion dated 8/25/94, at 8). FPA now argues that it "did not challenge the particulars of Houston General's arguments ... because it did not appear to FPA that the Rule applied at all in these circumstances." (FPA Brief, at 2). FPA concedes that "in hindsight" it should have set forth substantive arguments in response to Houston General's position. (FPA Brief, at 2–3).

FPA now argues, as it previously should have, that the dismissal of the state court action was not "voluntary", as that term is used in the rule. FPA claims that it could not properly oppose Houston General's motions to dismiss, because it could not reveal sensitive information about its own potential liability that it obtained during the course of confidential settlement discussions with counsel in the Colts Neck Estates litigation. Therefore, since it had no other alternative, FPA felt compelled to withdraw its opposition to Houston General's motions to dismiss and sign the consent order authorizing dismissal of the action. This was not a voluntary act, according to FPA, and neither was the decision to proceed by consent order rather than by accepting a grant of Houston General's motion to dismiss. (FPA Brief, at 4–5). FPA maintains that it acted at all times in good faith and did not engage in the "forum-shopping" that the rule was designed to prevent. (FPA Brief, at 5–10).

These matters were not overlooked in the Court's determination; rather, the Court was presented with all the pertinent facts, reviewed the sequence, timing and effect of both parties' actions, and made a finding that the situation fell within the parameters of Rule 41(d). This Court did not find as a basis for the imposition of costs that FPA engaged in bad faith forum-shopping, but rather found that the purpose of Rule 41(d) was to protect the defendant from financing duplicitous and vexatious litigation. As stated by this Court:

388

Both [Houston General] and FPA are parties in the [federal] case. Both parties agree that the state court action and the federal action involve identical issues. It appears from the submissions that FPA agreed to voluntarily dismiss the state court action because they preferred not to submit evidence to the judge that would indicate that the claims against them would exceed [Houston General's] insurance trigger. The purpose for the Court's grant of discretion is to discharge the filing and dismissal of cases for such reasons and thereby avoid the oppressive litigation which 41(d) was instituted to discourage.

(Opinion dated 8/25/94, at 9). If FPA disagrees with the Court's decision to award costs under Rule 41(d), that should be dealt with in the normal appellate process, not on a Rule 12I motion for reconsideration. *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F.Supp. at 162; *G–69 v. Degnan*, 748 F.Supp. at 275.

### III. *Attorney's Fees as Costs Under Rule 41(d)*

FPA also seeks reconsideration of this Court's decision to award attorney's fees as part of "costs" under Rule 41(d). FPA argues that the United States Supreme Court rendered an opinion after the conclusion of the parties' briefing of the initial motion which strongly supports FPA's contention that attorney's fees are not part of the "costs" awardable under Rule 41(d). (FPA Brief, at 11–20). In *Key Tronic Corp. v. United States*, —— U.S. ——, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994), the Supreme Court determined that attorney's fees are not part of the "costs of response" within the meaning of Section 107(a)(4)(B) of Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9607(a)(4)(B). Although the holding in that case does not directly answer the question of whether attorney's fees are properly included in the "costs" of Rule 41(d), FPA points out that the reasoning behind the Court's opinion suggests just such a result.

 The Court stated that:

Our cases establish that attorney's fees generally are not a recoverable cost of litigation "absent explicit congressional authorization." [ ] Recognition of the availability of attorney's fees therefore requires a determination that "Congress intended to set aside this longstanding American rule of law."

*Id.* at ——, 114 S.Ct. at 1965 (citations omitted). The Court noted, however, that "[t]he absence of specific reference to attorney's fees is not dispositive if the statute otherwise evinces an intent to provide for such fees." *Id.* Thus, although the opinion underscores the historical restraint American courts have placed upon the shifting of attorneys' fees, it does not, as FPA suggests, prohibit a court from exercising its discretion in awarding attorneys' fees as part of the costs under Rule 41(d). Rather, it directs that a court should closely examine the rule or statute under which attorney's fees are proposed to be awarded to determine whether Congress explicitly or implicitly authorized such an award. *Id.*

 Far more commanding is FPA's argument that *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), supports the exclusion of attorney's fees from "costs" under Rule 41(d). FPA never presented an argument based upon *Marek v. Chesny* in its initial opposition to Houston General's motion for Rule 41(d) costs. Generally, the term "overlooked" as used in Rule 12I refers only to facts and legal arguments properly presented to the court at the time the underlying motion was decided. Thus, parties' efforts to expand the record on reconsideration to matters not originally before the court have been flatly rejected. *See, e.g., Resorts Intern. v. Greate Bay Hotel and Casino*, 830 F.Supp. 826, 831 (D.N.J.1992) (court is bound *not* to consider new evidence in the limited procedural vehicle of Rule 12I); *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F.Supp. 159 (D.N.J.1988) (any affidavits and exhibits in possession of the parties at the time relevant to the underlying motion should have been advanced then). Nevertheless, in some situations the court may consider new facts or arguments that, properly considered, might have led to a different result. *See G–69, a/k/a DG–2 v. Degnan*, 748 F.Supp. 274, 275 (D.N.J.1990) (citing *In the*

*Matter of Arbitration Between Dow Jones & Co., Inc. v. Irwin & Leighton, Inc.,* 1990 WL 8733, 1990 U.S.Dist. LEXIS 1068 (D.N.J. 1990) (new evidence allowed on motion for reconsideration when new evidence required court to change its prior holding)); *Maldonado v. Lucca,* 636 F.Supp. 621, 630–31 (D.N.J. 1986) (court considered new evidence regarding defaulting defendant on motion for reconsideration of assessment of damages among multiple defendants).

The issue presented to the Court in *Marek v. Chesny* was whether the term "costs" as used in Fed.R.Civ.P. 68 [2] includes attorney's fees awardable in the underlying litigation to a prevailing party in a Title VII case under 42 U.S.C. § 1988. The Court concluded that since there was no explicit allowance for attorney's fees in the rule, nor was there any congressional indication that the "costs" of Rule 68 include attorney's fees, the nature of the costs awardable under the rule was to be determined by the relevant substantive statute or other authority governing the underlying litigation. 473 U.S. at 7–8, 105 S.Ct. at 3015–16. Therefore, because *Marek* was a civil rights case brought pursuant to 42 U.S.C. § 1983, and Congress expressly included attorney's fees as "costs" available to a prevailing plaintiff in a § 1983 suit, *see* 42 U.S.C. § 1988(b), such fees were subject to the cost-shifting provision of Rule 68. "In other words, all costs properly awardable in an action are to be considered within the scope of Rule 68 'costs.' Thus, absent congressional expressions to the contrary, where the underlying statute defines 'costs' to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68.... This 'plain meaning' interpretation of the interplay between Rule 68 and § 1988 is the only construction that gives meaning to each word in both Rule 68 and § 1988." *Id.* at 9, 105 S.Ct. at 3016–17.

■ FPA urges that *Marek v. Chesny* provides the analysis that this Court must undertake in its determination of an award of costs under Rule 41(d). Under this "plain meaning" approach, if a rule or statute pro-

viding the authority for an award of costs does not come with its own definition of costs, then the Court must look to the statute or other legal authority governing the substantive action, and only if the underlying statute provides for the shifting of attorney's fees may the Court include attorney's fees as part of costs under Rule 41(d).

■ Had this Court been presented with the analysis of *Marek v. Chesny* during its consideration of Houston General's original motion, the Court would have been constrained to apply its reasoning to the instant case, and it is for this reason that FPA's motion for reconsideration of the Court's award of attorney's fees will be granted.

This Court has conducted an extensive search and has found no cases that have applied the *Marek v. Chesny* "plain meaning" approach to an award of "costs" under Rule 41(d). As this Court noted in its earlier opinion, there is a paucity of caselaw on the interpretation of the language of Rule 41(d). Despite this lack of authoritative caselaw, this Court finds that there is no strong basis for limiting *Marek* to actions involving Rule 68. Logically read, its analysis would be triggered whenever a rule providing for an award of costs is silent as to the definition of costs. *See McDonald v. McCarthy,* 966 F.2d 112, 116 (3d Cir.1992) (applying the *Marek* analysis to hold that "costs" in Fed.R.App.P. 39 do not include attorney's fees because that rule provides its own definition of costs).

■ The case upon which this Court primarily relied in its decision to include attorney's fees as part of Rule 41(d) costs, *Behrle v. Olshansky,* 139 F.R.D. 370 (W.D.Ark. 1991), *appeal dismissed,* 966 F.2d 1458, 1992 WL 120377 (8th Cir.1992), makes no mention of *Marek* in its discussion, but the *Behrle* court does point out that Rule 41(d) allows the court to make an order for the payment of costs "as it may deem proper". *Behrle,* 139 F.R.D. at 373–74. It is this phrase that the *Behrle* court—and Houston General—found to be a distinguishing feature of Rule 41(d) and one that places an award of attor-

---

**2.** Rule 68 provides that if a timely pretrial offer of settlement is not accepted and "the judgment finally obtained by the offeree is not more favor-

able than the offer, the offeree must pay the costs incurred after the making of the offer."

ney's fees as "costs" within the court's discretion. It is just as likely, though, that the phrase "as it may deem proper" refers to the court's discretion in its initial decision whether to award costs or not; it does not necessarily provide discretion to determine whether attorney's fees may be included in an award of costs. Rarely in the history of our American legal system have awards of attorney's fees been left up to the discretion of the judiciary. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (discussing and detailing the general rule that attorney's fees are not recoverable unless Congress has made an explicit legislative exception).

■ Since Rule 41(d) does not provide a definition of "costs" either in its language or comments, this Court must look to the legal authority governing the underlying action to determine whether it provides for the shifting of attorney's fees. The state action filed by FPA which generated the need for a Rule 41(d) sanction sought a declaratory judgment that Houston General had a duty to provide excess liability coverage to FPA. New Jersey law does give the court discretion to shift attorney's fees "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant". N.J.Ct.R. 4:42-9(a)(6). However, this provision provides for the shifting of attorney's fees in only one direction—to a successful claimant; an insurer who succeeds on the suit or settles with an insured generally does not fall within the rule's reach. *Cf. Tooker v. Hartford Accident & Indemnity Co.,* 136 N.J.Super. 572, 347 A.2d 371 (App.Div.1975), *certif. denied,* 70 N.J. 137, 358 A.2d 184 (1976) (counsel fees awarded to secondary carrier after it successfully prosecuted a coverage action against a primary carrier that had wrongfully refused to defend its insured). Houston General, as the defendant-insurer in the state action, would not have been entitled to attorney's fees as a "successful claimant" in the state action, and, therefore, cannot claim the benefit of the New Jersey rule in the instant action. *See Sears Mortg. Corp. v. Rose,* 134 N.J. 326, 356, 634 A.2d 74 (1993) (restating

the policy of N.J.Ct.R. 4:42-9(a)(6) is to protect insureds from groundless disclaimers and to "provide more equitably to an insured the benefits of the insurance contract ...").

■ The Court is unaware of any other provision that would allow for the shifting of attorney's fees in an insurance coverage action in New Jersey state court. New Jersey follows the longstanding American rule that sound judicial administration is best advanced if litigants bear their own counsel fees. *State Dept. of Environ. Protect. v. Ventron Corp.,* 94 N.J. 473, 504, 468 A.2d 150 (1983). Thus, legal expenses, whether for compensation of attorneys or otherwise, are not recoverable absent express authorization by statute, court rule, or contract. *Id.*

■ Although a federal court can impose attorney's fees under the so-called "bad faith doctrine", *see Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Landon v. Hunt,* 938 F.2d 450 (3d Cir.1991), this Court did not make a finding of bad faith on the part of FPA, as such a finding is not necessary to support an award of costs under Rule 41(d).

The arguments and factors that weighed heavily in this Court's decision to include attorney's fees as costs in its Rule 41(d) award are significantly overshadowed by the applicability of *Marek v. Chesny* to this situation. Houston General has failed to persuade this Court that the language of Rule 41(d) should be interpreted differently from Rule 68, the subject of the holding in *Marek.* Since the legal authority governing the state action which gave rise to the Rule 41(d) award does not allow for the shifting of attorney's fees, this Court concludes that the costs awarded under Rule 41(d) in this instance do not include attorney's fees. For these reasons, this Court finds it must reverse its prior decision awarding attorney's fees as costs in its Rule 41(d) sanction and order FPA to pay to Houston General its costs of litigating the state court action, along with the costs of filing its Rule 41(d) motion, as those costs are enumerated in 28 U.S.C. § 1920,[3] which enumerates expenses that a

---

**3.** Section 1920 provides:

A judge or clerk of any court of the United States may tax as costs the following:

federal court may tax as as costs. From a review of the fees and costs submitted by Houston General, FPA is ordered to pay a total of $1,532.15 to Houston General,[4] payable whether or not the proceedings against Houston General are stayed.

IV. *Conclusion*

For the reasons expressed above, Defendant/Third–Party Plaintiff's motion to reconsider this Court's Order of August 25, 1994 granting costs and attorney's fees to Third–Party Defendant Houston General pursuant to Fed.R.Civ.P. 41(d) is granted.

### ORDER

THIS MATTER having been brought upon motion before the Court by Paul G. Shapiro, Esquire, attorney for Defendants/Third–Party Plaintiffs FPA, for an order to reconsider this Court's Order of August 25, 1994 granting costs and attorney's fees to Third–Party Defendant Houston General pursuant to Fed.R.Civ.P. 41(d); and the Court having considered the moving papers and the opposition thereto; and for good cause shown herein and in the accompanying Letter Opinion;

IT IS this 9th day of February, 1995 hereby

(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

**ORDERED** that the Defendants/Third–Party Plaintiffs' motion is **GRANTED.** This Court affirms its award of costs pursuant to Fed.R.Civ.P. 41(d) against FPA and reverses its determination that attorney's fees are to be included in the award of costs. FPA shall submit to Houston General, within thirty (30) days from the date of this Order, $1,532.15 as reimbursement for Houston General's costs in the previously dismissed state action.

(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
28 U.S.C. § 1920.

4. The following costs, documented in Exhibits A and B of the affidavit of Griffith Parry of Houston General, are recognized by this Court in connection with the Rule 41(a) award:

| | Postal | Copying | Document Production | Filing and Docket Fees |
|---|---|---|---|---|
| Inv.1008: | $ 25.23 | | | |
| Inv.1006: | 56.11 | $ 48.00 | | |
| Inv.1005: | 19.90 | 172.80 | | |
| Inv.1004: | 47.85 | 21.25 | $693.41 | |
| Inv.1003: | 79.35 | 113.42 | | $ 95.00 |
| Inv.1002: | 19.60 | | | 4.00 |
| Inv.1010: | 39.11 | | | |
| Inv.1011: | 79.42 | 8.00 | | |
| Inv.1008: | | 9.70 | | |
| | $366.57 | $373.17 | $693.41 | $ 99.00 |