Harry **BEHRLE**, Plaintiff,

v.

Melvin **OLSHANSKY**, Defendant.

Civ. No. 90–3079.

United States District Court,
W.D. Arkansas,
Harrison Division.

Sept. 13, 1991.

Frank C. Elcan, Elcan & Sprott, Harrison, Ark., Mark W. Nichols, Nichols, Wolff & Ledbetter, Little Rock, Ark. for plaintiff.

Franklin S. Hamlin, Eichenbaum, Scott, Miller, Liles & Heister, Little Rock, Ark., Marjorie E. McCollom, Arvey, Hodes, Costello and Burman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

On November 28, 1990, plaintiff, Harry Behrle, filed suit against defendant, Melvin Olshansky, alleging that in 1981 he contracted with the defendant to sell controlling interest in a corporation 81% owned by plaintiff. He alleges that defendant, in entering into such agreement and in purchasing the corporate stock, "intentionally employed devices, schemes and artifices to defraud, made untrue statements of material facts, and omitted to state material facts necessary to make the statements made not misleading." Additionally, plaintiff claims that Olshansky, after acquiring the corporation, took other acts intended to defraud him. He prays for compensatory damages of $233,989.08 and punitive damages of $701,967.24.

While the immediately preceding paragraph adequately describes this lawsuit, it by no means comes even close to describing what has happened in the case to this point. What has transpired causes the court a great deal of concern, and in this court's view, is an example of the "system" not working. Justice has not been done because the parties have not had their day in court even though this matter has been in one court or another for nearly a decade, and, if certain affidavits filed in the case are taken as true, defendant has incurred attorney's fees fast approaching $150,000.

The file reflects that plaintiff's claim that he was defrauded first appeared in court when Mr. Behrle filed a lawsuit against this defendant and other defendants in the Chancery Court of Boone County, Arkansas, apparently, judging from the docket number, sometime in 1982. The file does not reflect what happened to the case between 1982 and 1984, but it does show on November 19, 1984, apparently after an amendment to the complaint had been filed, the matter was removed to this court. Plaintiff, through his attorney, objected to the removal and filed a motion to remand, contending that this court did not have jurisdiction. On March 5, 1985, the court agreed, and remanded the case to the Boone County Chancery Court.

Again, after the case was remanded, at least as far as can be determined from the file, it disappeared into the mist. It appears that the next thing that happened is that plaintiff filed a second amended complaint in Boone County Chancery Court in early October, 1989. The case finally came to trial on November 2, 1990, almost eight years after the case had initially been filed in that court. The case was tried for three full days, and, because only three days had been set aside for the trial, the trial judge continued the trial until November 27, 1990, when it was to be resumed and completed. On that date, the plaintiff, acting through his attorney, Frank Elcan, nonsuited the case. Under Rule 41 of the Arkansas Rules of Civil Procedure, a litigant may nonsuit a case once as a matter of right.

The very next day a lawsuit, making identical claims, was filed in this court. Consequently, more than eight years after plaintiff had initially filed his lawsuit, and, according to defendant's proof, after he had incurred in excess of $141,000 for attorney's fees, we have a lawsuit in this court in which the parties are exactly where they were more than eight years ago. In this court's view, there is obviously something wrong with that.

Pending before the court is defendant's motion requesting that the court require plaintiff to reimburse it for costs of the prior action, including attorney's fees, and for the court to stay this proceeding until such costs are paid. Defendant contends that the court is authorized to do so by the provisions of Rule 41(d) of the Federal Rules of Civil Procedure.

In opposition to the motion, plaintiff's counsel, Mr. Elcan, explained the voluntary nonsuit taken by him in the very middle of the trial, after the case had languished in state court for years, as follows:

[P]laintiff would state that the voluntary nonsuit taken by him in state court was necessitated by the intentional and deliberate delay and stonewalling of the Defendant during the course of the first three days of trial. The conduct of the Defendant prevented the conclusion of the trial within the time allotted, thereby allowing him to have a continuance of the case to prepare his defense of the Plaintiff's case in chief and creating a substantial time interval between the presentation of the Plaintiff's evidence and the rulings of the trial court.

Additionally, plaintiff contended that the court should not order him to pay costs because he was not financially able to do so, and an affidavit of Mr. Behrle was attached in support of this claim.

In a letter to the attorneys for the parties, the court advised Mr. Elcan that it was not satisfied with the explanation given by him, and pointed out that, in our system, defendants are not required during the trial of a lawsuit to do anything until a plaintiff has completed his case in chief. Mr. Elcan was advised that "stonewalling" was probably not an adequate excuse for what had occurred. In his response, counsel explained that by "stonewalling" he meant that the defendant's counsel engaged in what he believed to be protracted and unnecessary cross examination of his witnesses, causing it to become impossible to complete the case in the three days allotted to try it. He says that, because of that tactic:

> Obviously, Plaintiff took the nonsuit for a practical advantage. The Defendant would have twenty-four days to prepare to rebut the testimony which had been introduced by Plaintiff. It also was very likely that the Defendant's case would continue past the second three days scheduled and continue to another time. By having these breaks, the Defendant would have the full advantage of the principle of recency which is so critical to a trier of fact.

As this court has already indicated in letters to counsel, it simply does not accept that as a valid excuse. Obviously, if the plaintiff was truly worried about giving the defendant extra time to prepare to meet the evidence that he had presented to the court, a nonsuit of the state court case and the filing of a new lawsuit in this court, with the attendant delay that naturally must occur when a new lawsuit is filed, would give the defendant even more time to prepare for trial.

The court believes that there can be no explanation for plaintiff's actions other than that he was "forum shopping". It is probable that plaintiff was not satisfied with his case after three days of trial, so he nonsuited it, and then, the very next day, filed it in this court, the very court that he had successfully resisted the case being removed to in 1984.

■ Under the circumstances of this case, and because of the particularly egregious conduct of plaintiff and his counsel, the court believes that it has no alternative but to "make such order for the payment of costs of the action previously dismissed as it may deem proper". It is obvious that plaintiff's conduct has prejudiced and harmed defendant, at least monetarily, since he has unquestionably expended a great deal of time and incurred very substantial expenses in defending eight years of litigation which precipitously ended by plaintiff's voluntary act. The court has no question but that a great deal of that expense will be "wasted" because many of the things that were done during that eight years of litigation will have to be redone in this lawsuit filed in the next decade after the initial suit was instituted.

Rule 41 vests the court with sound discretion in respect to whether costs of previously dismissed actions will be imposed against the dismissing party, but the court is convinced that it would be an abuse of its discretion not to impose such costs. In *Kern v. TXO Production Corp.,* 738 F.2d 968 (8th Cir.1984), this court was reversed by the Court of Appeals because it allowed a plaintiff, during the course of a trial, to take a voluntary nonsuit as authorized by Rule 41(a). The appeals court held that this court abused its discretion by not imposing upon the plaintiff conditions for the

dismissal. It ordered this court to determine the amount of fees and expenses reasonably incurred by defendant up through the order of dismissal, and to condition a voluntary nonsuit upon the payment of such sum if the case was refiled. The court recognizes that that case involved a dismissal under Rule 41(a), but the court does not believe that the discretion vested in the court by that rule is different than that given to the court by Rule 41(d).

▄ After having ruled that the court must impose against the plaintiff costs of the previously dismissed action, a more difficult question, in the court's view, must be answered. The rule says that the court may "make such order for the payment of *costs* of the action previously dismissed as it may deem proper." (emphasis supplied). Does "costs" mean only those items that are traditionally considered to be costs in the American legal system or is the court, in its discretion, authorized to include in "costs" attorney's fees reasonably incurred? If it is not, and if the court may impose only "costs" which a winning party would be entitled to recover under Rule 54(d) and 28 U.S.C. § 1920 as interpreted by the United States Supreme Court in *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), then the provision has no "teeth" and is useless. If that is the law, the provision of Rule 41(d) will not serve its intended purpose of encouraging parties not to act as plaintiff has acted in this case, to the substantial detriment of the defendant. For example, plaintiff contends that an application of *Crawford Fitting* to the facts of this case would result in the court awarding defendant no more than $447.75 in "costs" incurred in years of fruitless litigation. Assuming that there must be some fairness in the law, that simply can't be the law.

So much has been written on whether, under the American rule, "costs" includes attorney's fees that it would serve little purpose for the court to discuss that matter.[1] However, as a matter of interpretation, the court is troubled by the drafting committee's use in Rule 41(d) of the term, "costs", in view of the well-settled law in this respect. It can certainly be argued that, when the committee drafted the federal rules, and when Congress adopted them, they knew how to say that attorney's fees are to be included in costs or expenses to be imposed when they intended that. In Rule 37 they said that a party could recover "the reasonable expenses incurred in obtaining the order, including attorney's fees." Similarly, in Rule 11, Congress provided that, where a party had violated the rule, the court shall impose appropriate sanctions "which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee."

On the other hand, defendant has argued throughout this proceeding that such a reading of Rule 41(d) is too restrictive in view of its intended purpose. That contention may have merit. After all, the rule authorizes the court to "make such order for the payment of costs of the action previously dismissed as it may deem proper," so the court may be given discretion by this rule to include attorney's fees if it believes that is proper. It makes sense that Congress may have intended this, and there is probably no reason for one to suppose that Congress intended that costs recoverable by the winning party under the provisions of Rule 54(d) would be exactly the same items of expense as are incurred by a party because of the actions of a party in dismissing an action and refiling it.

---

1. For a discussion of the meaning of the term, "costs", when used in a legal sense, *see* 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure,* § 2666 (2d Ed.1983). As the author of that article said:
   In the United States, contrary to the practice in England, it has been the custom to require

a litigant to assume the burden of paying for his own litigation connected legal services in the absence of a rule or statute to the contrary. Thus, counsel fees ordinarily are not taxable as costs. *Id.* at § 2675. *Id.* at § 2675 (citations omitted).

It is noteworthy that Rule 54(d) doesn't even require intervention by the court in imposing costs. It provides that "costs may be taxed by the clerk on one day's notice." It may very well be that, because of this, Congress intended that costs imposed under Rule 54(d) are to be almost automatically calculated simply by reference to the provisions of 28 U.S.C. § 1920. As the Supreme Court held in *Crawford Fitting,* when costs are imposed under this provision of the rules, even the court has very little discretion and must impose those costs allowed by statute. Rule 41(d) contains no such restriction. On the contrary, it specifically authorizes the court to "make such order" as it "deems proper."

There is a dearth of case law on this issue. Defendant's counsel has cited the court to many cases in which it was held that the court may include attorney's fees in the conditions imposed when a case is voluntarily nonsuited under the provisions of Rule 41(a). There is no question but that attorney's fees have often been awarded as a condition to a voluntary nonsuit taken under Rule 41(a), as this court frequently does, but those cases are not helpful in deciding the issue before the court in this case. That is because the provisions of Rule 41(a) are substantially different than the provisions of subparagraph (d). Subparagraph (a) does not mention "costs" and simply allows the court to impose "such terms and conditions as the court deems proper," authorization that is at least arguably much broader than that given by subparagraph (d).

The court is aware of only three cases that have even discussed this issue, and only one of those has seemed to recognize that there is such an issue or to discuss the reasoning employed in reaching the result. In *Eager v. Kain,* 158 F.Supp. 222, 223 (E.D.Tenn.1957), the court simply said, without explanation, that Rule 41(d) provides that "if a plaintiff has once dismissed an action in any court, upon the commencement of an action including the same claim in a federal court, the court may require the payment of costs, including attorney's fees, of the previously dismissed action as a prerequisite to the filing of the action."

In *Evans v. Safeway Stores, Inc.,* 623 F.2d 121 (8th Cir.1980), the court, in a one-page per curiam opinion, affirmed the award of $200.00 in attorney's fees by the district court in a case that was refiled after it was dismissed without prejudice sixteen months previously. It does not appear that there were any conditions imposed when the case was initially dismissed. The Court of Appeals simply affirmed without much discussion the trial court's action and cited Rules 41(a) and (d).

In the case of *Simeone v. First Bank Nat'l Ass'n.,* 125 F.R.D. 150 (D.Minn.1989), Judge Harry McLaughlin recognized the issue, discussed it, and ruled in regard to it. After citing authorities in respect to the "American rule", he held that Rule 41(d) did not authorize him to include attorney's fees when imposing costs of the previously dismissed action. He did, however, recognize that the term, "costs," when used in that provision of the rules was broader than that term when used in Rule 54(d). As a result he allowed the defendant to recover costs that would not have been recoverable under 28 U.S.C. § 1920 as interpreted in the *Crawford Fitting* case. Finding that the previous dismissal by plaintiff and a refiling in federal court were part of an effort by plaintiff to "secure a more favorable forum", Judge McLaughlin found that "such vexatious conduct is properly punished by an award of costs" in the amount of $13,922.97.

The court believes that there is a great deal of merit in the reasoning employed by Judge McLaughlin in the *Simeone* opinion, but doubts that that is what Congress intended when the rule was adopted. Surely, Congress intended that that provision of the federal rules have some "teeth", and it simply has none, as is evidenced by the circumstances of this case, if the costs that would have been recoverable under Rule 54(d) are all that the defendant can receive for years of fruitless litigation. The court believes and finds that Congress must have intended when Rule 41(d) was adopted to give the court discretion to include reasonable attorney's fees in the "costs" that could be imposed.

Even if that is not the case, there is other authority in this circuit to support such action.[2] In the early case of *Mercantile–Commerce Bank & Trust Co. v. Southeast Arkansas Levee Dist.*, 106 F.2d 966, 971 (8th Cir.1939), the Court of Appeals for this circuit held that "in exceptional cases for dominating reasons" a trial court may award the prevailing party attorney's fees as part of the costs incurred.

In *Grandview v. Hudson*, 377 F.2d 694, 696 (8th Cir.1967), the court said: "It has been recognized that attorney's fees may be recovered by the prevailing party when a court of equity determines that their allowance is necessary in order to balance the interests of the respective parties." (citing cases).

In 1973 the Court of Appeals for this circuit, after pointing out that Rule 54 provides that the taxation and allowance of costs is subject to the discretion of the court, held: "Ordinarily attorney's fees are not taxable as costs except where there are 'dominating reasons of fairness and justice.'" *First National Bank in Sioux Falls v. L.T. Dunham, et al.*, 471 F.2d 712, 713 (8th Cir.1973) (citing *Mercantile–Commerce*, 106 F.2d 966, 971). The trial court had awarded attorney's fees against the losing party "for 'dominating reasons of justice' and because L.T. Dunham's conduct made it necessary for the plaintiff to litigate with third parties in order to enforce his judgment." The Court of Appeals affirmed the trial court.

This court recognizes that the Supreme Court decision in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) changed much of the preexisting law with respect to when attorney's fees could be awarded by

the trial court, but the court's authority in situations such as the one before the court was not affected by that decision.[3]

Plaintiff argues, in essence, that he cannot be guilty of bad faith for simply exercising a right given to him by the Arkansas Rules of Procedure. That argument has some initial attractiveness, but it becomes less attractive when it is recognized that Rule 41 of the Arkansas rules is, in most respects, substantially identical to Rule 41 of the federal rules. It is true that the Arkansas Rule 41(a) does not authorize the court to impose conditions when a voluntary nonsuit is taken, but the rule also contains subparagraph (d) which is identical to the provisions of the federal rule. Thus, even though a party has a right to take one voluntary nonsuit under the Arkansas rules, he still does so at his peril. The trial court may, upon the refiling of an action, impose the costs of the previously dismissed action. The only Arkansas case on point recognizes that, where a state court case is dismissed and refiled in federal court, the federal court is the only court that has jurisdiction to apply the provisions of Rule 41(d). *Transit Homes, Inc. v. Bellamy*, 287 Ark. 487, 701 S.W.2d 126 (1985).

■ Having ruled that the court must award defendant reasonable costs, including attorney's fees incurred in the previously dismissed action, the court is faced with the impossible task of determining what was "reasonable" in a case that literally "went on forever" in state court. It is obvious from the voluminous statement for attorney's fees submitted by affidavit with defendant's motion for payment of costs that there was a great deal of over-lawyering in the years of litigation in the Chancery Court of Boone County.[4] That, in this

---

**2.** *See generally* 10 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice & Procedure*, § 2675 at 280–290 (2d. Ed.1983).

**3.** For a general discussion of the effect of the *Alyeska* case, *see* 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure*, § 2675 (2d. Ed.1983). As that article points out, Justice White in his opinion for the court specifically noted that there were certain well-recognized exceptions to the "American rule", among them the so-called "bad faith doc-

trine". The author of the Wright & Miller article says that pre-*Alyeska* cases relying on the "bad faith doctrine" are still good law, and that conclusion is supported by specific references in respect to that issue in the opinion.

**4.** In fact, in this court's view, the bills submitted are yet another example of the modern day malady in the legal system of law firm billing gone wild. The Little Rock law firm now known as Eichenbaum, Scott, Miller, Liles and Heister, claims that it charged attorney's fees

court's experience, is almost always the case where a case goes on longer than it should, and that is one of the reasons this court makes every effort to terminate cases in a matter of months after filing, rather than years.

Defendant, by affidavits of counsel, estimates that 35% of the amount previously incurred will have to be incurred again in the present case. With all due respect, there is no way that the attorneys or this court, or anyone else, can determine that with any degree of exactitude. In order to do "justice" in this case, the court must liberally use the discretion granted by Rule 41(d). After doing so, based on its experience in matters such as this as both a practicing lawyer and judge, the court has concluded that it is "fair" for the defendant to recover $25,000 of the attorney's fees previously incurred by him. The court believes that, very conservatively, it can be expected that at least that amount will have to be duplicated because of the refiling.

Additionally, defendant has shown to the court's satisfaction that it incurred reasonable expenses during the state court litigation in the amount of $3,606.75, and the court will order plaintiff to reimburse defendant for those expenses. In so doing, the court rules that the provisions of Rule 41(d) do not limit it to imposing only those costs that could be recovered by the winning party under the provisions of Rule 54(d).

Contemporaneously with the filing of this memorandum opinion, the court will enter an order giving plaintiff until the close of business on September 27, 1991, to pay to defendant the costs and expenses, including attorney's fees, granted above.

Such order will stay proceedings in this matter. In the event that the court is not notified that the amount imposed has been paid by the close of business on September 27, 1991, the matter will be administratively terminated, to be reopened only upon a showing of compliance by plaintiff with the court's order. If the court does not receive notice that the award of costs has been paid by the close of business on November 27, 1991 (one year after this case was filed), the matter will be dismissed with prejudice.

totalling $93,924.93. The Chicago firm of Arvey, Hodes, Costello and Burman, did not even come into the lawsuit until November of 1989, yet that firm claims that it charged additional fees of $47,237.91. It appears that the responsible lawyer from the Eichenbaum firm charged an hourly rate during the period ranging from $85.00 per hour to $120.00 per hour and the lawyers in the Arvey firm ranged up to an hourly rate of $230.00 per hour. If the court assumes that the average hourly rate during this period was $100.00 per hour, that means that these lawyers are telling the court that they spent 1411 hours or, in effect, that a lawyer spent 35.3 forty-hour weeks doing nothing but work on this case. If they did, a great deal of the time spent was unquestionably wasted and not reasonable. The court does not believe that it was reasonable for two law firms of the size and stature of these to have worked on this case, and, even if their client desired it and authorized it, it is not reasonable to expect the other side to pay the fees incurred by this duplicative effort.