**Laura ESQUIVEL, Plaintiff,**

v.

**Alfonso ARAU, Arau Films International S.A. de C.V., Cinema Chocolate S.A. de C.V., Atracciones Polifemo S.A. de C.V., and Seventh Dimension Entertainment Company, Inc., Defendants.**

**No. CV 95–6551 WJR (Mcx).**

United States District Court, C.D. California.

Jan. 26, 1996.

**1384**

Martin Garbus (pro hac vice), Maura Wogan (pro hac vice), Frankfurt, Garbus, Klein & Selz, P.C., New York City, Carol E. Handler, Dana Milmeister, Alschuler, Grossman & Pines, Los Angeles, CA, for plaintiff Laura Esquivel.

Lawrence M. Harnett (pro hac vice) and Eric L. Gilioli (pro hac vice), Marks & Murase L.L.P., New York City, Matthew E. Digby, Craig L. Sheldon, Marks & Murase, L.L.P., Los Angeles, CA, for defendants Alfonso Arau, et al.

## OPINION AND ORDER

REA, District Judge.

Defendants have brought a motion for a stay of proceedings· and an award of costs pursuant to Federal Rule of Civil Procedure 41(d). The matter came on regularly for a hearing before the Court on January 22, 1996. Having considered the motion, the papers filed in support thereof and in opposition thereto, the oral argument of counsel, and the file in the case, the Court now makes the following decision.

## I. BACKGROUND

### A. *Facts of the Case*

Plaintiff Laura Esquivel has brought the instant action against her ex-husband, Alfonso Arau, and various other defendants associated with Arau's film production enterprises.[1] Esquivel is the author of a well-known novel, *Like Water for Chocolate,* which received critical acclaim and was eventually made into a feature film directed by defendant Arau. The case concerns the motion picture and live-theater rights to three works over which plaintiff claims authorship: *Like Water for Chocolate* (a novel and screenplay), *Little Ocean Star* (a screenplay), and *The Law of Love* (a novel).

Esquivel held a copyright in the novel *Like Water for Chocolate.* She alleges that she authored a screenplay based on the novel in reliance on two 1990 agreements whereby defendants Arau Films and Cinema Chocolate would receive a two-year renewable option for the rights to make a motion picture

---

1. The other named defendants are: Arau Films International S.A. de C.V., Cinema Chocolate S.A. de C.V., Atracciones Polifemo S.A. de C.V., and Seventh Dimension Entertainment Company, Inc.

based on the story in return for $50,000 and a percentage of the profits for Esquivel. Esquivel alleges that in October, 1992, after production of the film was near completion, Arau fraudulently induced her to sign a new contract that included a broad assignment of her rights in the work to defendants. Esquivel also alleges that the various defendants, through Arau, have made false representations to third parties regarding their rights to produce derivative works of Esquivel's *Little Ocean Star* and *The Law of Love* novels.[2]

Esquivel's complaint states claims for: 1) copyright infringement; 2) declaratory relief; 3) Lanham Act violations; 4) invasion of privacy; 5) commercial misappropriation; 6) unfair competition; 7) breach of contract; 8) accounting; 9) quantum meruit; 10) unjust enrichment; 11) fraud; 12) constructive fraud; 13) rescission based on fraud; and 14) tortious interference with prospective economic advantage.

**B.** *Procedural History*

Prior to this action, plaintiff Esquivel instituted two actions in New York involving the same transactions and parties as this action. On March 14, 1995, Esquivel instituted a New York state court action against the named defendants here (with the exception of Atracciones Polifemo S.A. de C.V.), asserting six causes of action.[3] Esquivel simultaneously launched a parallel action in the U.S. District Court for the Southern District of New York ("Southern District action"). In addition to the claims asserted in the state court complaint, Esquivel included two claims for copyright infringement and two claims for declaratory judgment.[4] On August 8, 1995, both sides stipulated to a stay of the state court action pending a decision in the Southern District action on a motion to

dismiss to be brought by defendants. On August 21, 1995, Esquivel filed a First Amended Complaint in the Southern District action, adding claims for: 1) Lanham Act violations (false designation); 2) copyright infringement; and 3) tortious interference with business relations. On September 5, 1995, defendants filed a motion to dismiss in the Southern District action based on lack of personal jurisdiction and improper venue.

On September 29, 1995, before defendants claim an opposition to the motion to dismiss was due, Esquivel filed the instant action in the Central District of California. In addition to the claims already asserted in the Southern District of New York action, Esquivel asserted claims for constructive fraud, invasion of privacy, commercial misappropriation, and unfair competition. On October 17, 1995, the day that defendants allege plaintiff's opposition to the motion to dismiss was due, Esquivel noticed a voluntary dismissal of the Southern District action. The dismissal was made under Rule 41(a)(1) and specified that it was "without prejudice."

Defendants have now brought the instant motion for an award of costs incurred in the Southern District action and for a stay of all proceedings in the instant action pending plaintiff's payment of such costs as the Court deems proper. Defendants claim that the instant action is based on essentially the same claims as the Southern District action, and therefore falls within the scope of Federal Rule of Civil Procedure 41(d). Plaintiff has opposed the instant motion.

## II. DISCUSSION

**A.** *Defendants' Entitlement to "Costs" Under Fed.R.Civ.P. 41(d)*

Under the Federal Rules, a plaintiff can dismiss his own action by "filing a notice

---

**2.** Esquivel alleges that defendants have continued to use rights to her *Little Ocean Star* screenplay pursuant to a two-year option agreement, despite having failed to renew the agreement by the required deadline. Esquivel also claims that defendants have distributed the work to prospective producers and represented it to be Arau's work. Finally, she alleges that defendants have misrepresented to prospective producers that they have an option of the motion picture rights to her as-yet unpublished novel, *The Law of Love.*

**3.** The causes of action were: 1) breach of contract; 2) accounting; 3) quantum meruit; 4) unjust enrichment; 5) fraud; and 6) rescission. The state court complaint related only to the transactions involving *Like Water for Chocolate,* but contained the same general factual allegations on that issue as the complaint in the instant action.

**4.** The federal court complaint included allegations related to *Little Ocean Star* and *The Law of Love.*

of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs." Fed.R.Civ.P. 41(a)(1). A notice of voluntary dismissal is effective at the moment it is filed, and no judicial approval or court order is required. *Pedrina v. Chun,* 987 F.2d 608 (9th Cir.1993).

A plaintiff's right of voluntary dismissal under Rule 41(a)(1) is not terminated by the filing of a Rule 12 motion to dismiss by the defendant. A motion to dismiss is "neither an answer nor, unless accompanied by affidavits discussing matters outside the pleadings that are not excluded by the court, a motion for summary judgment," and thus does not terminate the plaintiff's right of dismissal by notice. 9 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure,* § 2363 (2d ed. 1995); *see also Miller v. Reddin,* 422 F.2d 1264 (9th Cir.1970) (holding plaintiffs to be entitled to Rule 41(a)(1) voluntary dismissal even after a hearing on defendants' motion to dismiss); *Carter v. United States,* 547 F.2d 258 (5th Cir.1977) (holding that defendants' motion to dismiss did not terminate plaintiff's right to Rule 41(a)(1) voluntary dismissal even though defendants spent considerable effort preparing the motion).

Esquivel filed a Rule 41(a)(1) notice of voluntary dismissal in the Southern District action after defendants had filed their motion to dismiss. Neither answer nor summary judgment motion had been filed in that case. Thus, Esquivel was able to terminate the Southern District action without obtaining approval from the district court. This fact is significant, because a district court may require payment of litigation costs by the plaintiff as a condition to granting the dismissal under Rule 41(a)(2).[5] *See, e.g., Koch v. Hankins,* 8 F.3d 650 (9th Cir.1993).

Esquivel's filing of the instant action, however, raises the question of whether an award of costs to the defendants is now appropriate. Federal Rule of Civil Procedure 41(d) provides:

*Costs of Previously–Dismissed Action.* If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

Fed.R.Civ.P. 41(d). The language of Rule 41(d) clearly indicates that it conveys "broad discretion" on federal courts to order stays and payment of costs, and that neither is mandatory. *United Transportation Union v. Maine Central Railroad Corp.,* 107 F.R.D. 391, 392 (D.Me.1985); *Wahl v. City of Wichita,* 701 F.Supp. 1530, 1533 (D.Kan.1988). Rule 41(d) is "intended to serve as a deterrent to forum shopping and vexatious litigation." *Simeone v. First Bank National Association,* 971 F.2d 103, 108 (8th Cir.1992).

Defendants contend that Esquivel's decision to initiate the Southern District action, file the instant action, and then file a notice of dismissal without prejudice in the Southern District action constitutes blatant forum-shopping. Defendants allege that they were required to produce a detailed and comprehensive motion to dismiss in the Southern District action, only to see plaintiff refile the same claims in another district and notice dismissal without prejudice before an opposition was required. Esquivel responds that defendants have not demonstrated bad faith on her part, which she believes Rule 41(d) requires. In addition, Esquivel contends that if the Court does award costs, it should not award costs for any tasks that would be useful to defendants in the instant action.[6]

---

**5.** Under Rule 41(a)(2), where either an answer or summary judgment motion has been filed, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Fed.R.Civ.P. 41(a)(2).

**6.** On December 26, 1995, after the Court had postponed the hearing date on the instant motion

for three weeks, Esquivel filed an "Amended Memorandum of Points and Authorities in Opposition" to defendants' motion. This filing was improper because the postponement of the hearing date did not give plaintiff the automatic right to submit an additional opposition memo. The Court granted defendants' Ex Parte Application to Strike Plaintiff's Amended Opposition on January 4, 1995, on this basis. The Court will

■ Esquivel's choice of the Southern District of New York as a forum was questionable, to say the least. As an initial matter, it is clear that the plaintiff bears the responsibility of determining the appropriate forum in which to prosecute her case, *see, e.g., Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 839 (9th Cir.1986), and of establishing that personal jurisdiction exists. *Data Disc, Inc. v. Systems Technology Associates,* 557 F.2d 1280, 1285 (9th Cir.1977). Defendants' motion to dismiss in the Southern District action pointed out that neither party is a citizen or resident of New York, the complaint made no allegations of acts taking place in New York giving rise to the claims, the various agreements at issue were all executed outside of New York, and none of the witnesses or documents are in New York. Given that the causes of action are not clearly related to the forum activities of Arau or the other defendants, Esquivel would be required to show "substantial" or "continuous and systematic" contacts with the forum state to satisfy the requirements of federal due process. *Id.* at 1285. Esquivel's stated reasons for filing her action in the Southern District do not satisfy this standard.[7] Her decision to refile her action in

the Central District of California and then file the notice of dismissal in the Southern District action without responding to defendants' motion to dismiss for lack of personal jurisdiction appears to have been a recognition that her suit in the Southern District was vulnerable on the grounds asserted in the motion.

■ Costs may be imposed under Rule 41(d) where the plaintiff has brought a second identical, or nearly identical, claim and has requested identical, or nearly identical, relief. *Young v. Dole,* 1991 WL 158977 (E.D.N.Y.1991). Here, Esquivel's new action in the Central District incorporates all the claims previously brought in the Southern District Action. The only substantial change was the addition of claims for constructive fraud, invasion of privacy, commercial misappropriation, and unfair competition. In addition, the operative facts alleged are essentially the same. Thus, under the standard of Rule 41(d), plaintiff has "commence[d] an action based upon or including the same claim[s] [as brought in a previously dismissed action] against the same defendant." Fed. R.Civ.P. 41(d).[8]

therefore not consider plaintiff's "Amended Memorandum."

7. Esquivel states that she filed the actions in New York because she believed that: defendant Arau had conducted business and promotions in New York; there was a contractual relationship between defendants and Miramax Corporation, which is the U.S. distributor of one of the works at issue but is not a named defendant; and Arau "took steps in New York in connection with" the production of a live stage version of one of the works at issue. Esquivel does not specifically allege the ties of the other defendants.

Assuming, *arguendo,* that these contacts would be sufficient to make personal jurisdiction appropriate over at least defendant Arau, the Court has no basis on which to conclude that any of Esquivel's contentions have merit. Esquivel never substantiated her allegations either in the Southern District action or in the instant action with affidavits or other evidence. *See Data Disc, Inc.,* 557 F.2d at 1284 (holding that plaintiff cannot rely merely on pleading allegations for Rule 12(b)(2) motion to dismiss where personal jurisdiction is contested). Esquivel chose to voluntarily dismiss her case in the Southern District before the question could be resolved. Further, these arguments only make her decision to dismiss the Southern District action and refile elsewhere appear more capricious.

8. Esquivel does not argue that Rule 41(d) is inapplicable to her because the instant action was initiated just *before* the voluntary dismissal of the Southern District action. The Court notes, however, that a restrictive reading of Rule 41(d) might yield the conclusion that the rule only applies where the second action is brought *after* the first action has been dismissed. Although this question has not been well-addressed in the caselaw, at least one court has chosen to apply Rule 41(d) in a case where the sequence of events did not precisely match the plain language of Rule 41(d). *Anders v. FPA Corp.,* 164 F.R.D. 383 (D.N.J.), *aff'd,* 1995 WL 785109 (D.N.J. 1995). Another court has concluded that Rule 41(d) could not be applied where the second action was already pending at the time of voluntary dismissal, but only because Rule 41(a)(2) costs would have been an option in the first action. *White v. Telelect, Inc.,* 109 F.R.D. 655 (S.D.Miss.1986).

The Court finds that a restrictive reading of Rule 41(d) to exclude cases where a plaintiff files the second action immediately before Rule 41(a)(1) voluntary dismissal is not appropriate, given the rule's purpose. It is difficult to see how Esquivel's strategy differs in essence from that of the typical plaintiff who falls within the scope of Rule 41(d). Esquivel clearly initiated the instant action only because she planned

■ Contrary to Esquivel's assertions, there is no requirement of a showing of subjective "bad faith" either in the language of Rule 41(d) or in the relevant case law. Esquivel cites a number of cases that do not support her proposition that subjective bad faith of the plaintiff is required for Rule 41(d) costs.[9] Nothing in the language of Rule 41(d) or the case law suggests that a defendant must show "bad faith" before a district court can order payment by a plaintiff of costs incurred in a voluntarily-dismissed previous action. Instead, the court should simply assess whether a plaintiff's conduct satisfies the requirements of Rule 41(d), and whether the circumstances of the case warrant an award of costs to prevent prejudice to the defendant. Here, Esquivel has failed to present a persuasive explanation for the course of litigation described above, and it is clear that defendants have incurred needless expenditures as a result. Thus, an award under Rule 41(d) is appropriate.

■ Esquivel is correct, however, that the Court should not impose any costs associated with work that will still be useful to defendants in the instant litigation. In *Koch*, the Ninth Circuit held that a plaintiff who seeks Rule 41(a)(2) voluntary dismissal in one forum to pursue pending litigation in another forum can only be required to pay costs arising from "the preparation of work product rendered useless by the dismissal of [plaintiff's previous action]." *Koch*, 8 F.3d at 652; *accord Cauley v. Wilson*, 754 F.2d 769, 772 (7th Cir.1985). Because the purpose of an award of costs as a condition to Rule 41(a)(2) voluntary dismissal without prejudice is the same as that of an award of costs under Rule 41(d) once dismissal has already occurred and the second litigation is commenced,[10] the same standard for the type of costs awarded should apply.

### B.  *Attorneys' Fees under Rule 41(d)*

■ The Court must also address the question of whether attorneys' fees can be included in an award of costs under Rule 41(d), as defendants have sought attorneys' fees in their request. In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court recognized the "American Rule" that, absent express statutory authority, bad faith or willful disobedience of a court order, each party should bear the cost of its own attorneys' fees. *Id.* at 259–60, 95 S.Ct. at 1622. Congress has not extended "roving

---

soon thereafter to dismiss the Southern District action, which she did only three weeks later. The record does not indicate that she took any significant steps to prosecute until after voluntary dismissal of the Southern District action had occurred. In addition, Esquivel's Rule 41(a)(1) notice prevented the Southern District court from imposing any conditions to dismissal. Rule 41(d), therefore, represents the only means by which defendants can obtain redress for their unnecessary expenditures in defending against the same claims in the Southern District action. The Federal Rules contain the admonition that they shall be interpreted and administered so as "to secure the just ... determination of every action." Fed.R.Civ.P. 1. The Court is therefore loath to create a gaping loophole to Rule 41(d) that would effectively vitiate its impact in these circumstances, especially where plaintiff herself has not argued that the Court should do so.

9. In *Heckethorn v. Sunan Corp.*, 992 F.2d 240 (9th Cir.1993), the Ninth Circuit held that Fed. R.Civ.P. 41(a)(2), covering voluntary dismissals where court approval is required, does not provide an independent basis for *attorney* sanctions. *Id.* The Ninth Circuit so held in light of the rule that an attorney, as opposed to a party, is generally not liable for fees absent specific statutory authorization. *Id.* at 242 (reversing district

court's order requiring plaintiff's counsel to pay defendant's attorneys' fees under Rule 41(a)(2)). This holding contributes nothing to plaintiff's argument here. *Stevedoring Services v. Armilla International B.V.*, 889 F.2d 919 (9th Cir.1989), similarly does not aid plaintiff's argument and confirms only that a district court has discretion not to impose costs as a condition to a voluntary dismissal under Rule 41(a)(2).

10. The purpose of awarding costs on a Rule 41(a)(2) voluntary dismissal without prejudice, like that of awarding costs under Rule 41(d), is to compensate the defendant for the unnecessary expense that the plaintiff's litigation has caused. *See Cauley*, 754 F.2d at 772. In the case of a Rule 41(a)(2) dismissal without prejudice, the defendant may have to defend again at a later time and "incur duplicative legal expenses." *Id.* Costs and fees are not appropriate when a plaintiff obtains a voluntary dismissal with prejudice, however, because in such a case "the defendant cannot be made to defend again." *Id.* (quoting *Smoot v. Fox*, 353 F.2d 830, 833 (6th Cir.1965), *cert. denied sub. nom. League of Women Voters v. Smoot*, 384 U.S. 909, 86 S.Ct. 1342, 16 L.Ed.2d 361 (1966)).

authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted." *Id.* at 260, 95 S.Ct. at 1622. Thus, federal courts cannot, absent specific statutory authority or one of the other two enumerated exceptions in *Alyeska,* disturb the "uniform system of cost-bearing created by Congress." *Zambrano v. City of Tustin,* 885 F.2d 1473, 1481 (9th Cir.1989).

The Court finds itself confronting an issue of first impression in this circuit. The Ninth Circuit has not explicitly addressed the question of attorneys' fees under Rule 41(d), although it has repeatedly suggested that payment of attorneys' fees may be ordered as a condition to voluntary dismissal under Rule 41(a)(2). *E.g., Stevedoring Services of America v. Armilla International,* 889 F.2d 919, 921 (9th Cir.1989) (noting that "costs and attorney fees are often imposed upon a plaintiff who is granted a voluntary dismissal under Fed.R.Civ.P. 41(a)(2)"); *Lau v. Glendora Unified School District,* 792 F.2d 929 (9th Cir.1986) (vacating award of attorneys' fees under 41(a)(2) because district court did not allow plaintiff the option of withdrawing the motion for voluntary dismissal in lieu of accepting the court's condition); *Koch,* 8 F.3d at 652 (adopting cases of other circuits holding that a defendant is entitled to recover attorneys fees or costs for work not useful in continuing litigation between the parties); *Unioil, Inc. v. E.F. Hutton & Co., Inc.,* 809 F.2d 548, 556 (9th Cir.1986), *cert. denied,* 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987) (noting that a "usual" Rule 41(a)(2) condition involves payment of costs and attorneys' fees).

In the absence of controlling authority in this circuit, the Court must look to other circuit and district courts for instructive opinions. There is a lamentable dearth of case law on the issue of whether attorneys' fees are includible in an award of costs under Rule 41(d). *Behrle v. Olshansky,* 139 F.R.D. 370, 374 (W.D.Ark.1991). The courts that

have considered the question of attorneys' fees under Rule 41(d) have come to conflicting conclusions. Some have concluded that attorneys' fees are not recoverable. In *Simeone v. First Bank National Association,* 125 F.R.D. 150 (D.Minn.1989), cited by plaintiff, the district court concluded that, because the language of Rule 41(d) refers only to "costs," and because other provisions of the Federal Rules refer specifically to attorneys' fees, Congress did not intend to include attorneys' fees within the scope of Rule 41(d). *Simeone,* 125 F.R.D. at 155. The reasoning of that case, however, appears to contain an inconsistency.[11]

Other courts have perfunctorily awarded attorneys' fees under Rule 41(d), or recognized that they are available, without substantial discussion of the bases for their conclusions. *E.g., Zucker v. Katz,* 1990 WL 20171 (S.D.N.Y.1990) (awarding $2,201.72 in attorneys' fees under Rule 41(d) for court attendance); *Evans v. Safeway Stores, Inc.,* 623 F.2d 121 (8th Cir.1980) (affirming award of $200.00 in attorneys' fees under Rule 41(d) without substantial discussion); *Whitehead v. Miller Brewing Co.,* 126 F.R.D. 581 (M.D.Ga. 1989) (awarding attorneys' fees and costs under Rule 41(d)); *Eager v. Kain,* 158 F.Supp. 222, 223 (E.D.Tenn.1957) (stating that Rule 41(d) authorizes a court to "require the payment of costs, including attorney's fees, of the previously dismissed action as a prerequisite to the filing of the [subsequent] action").

At least one court has engaged in extensive discussion of the issue and concluded that attorneys' fees are available under Rule 41(d). *Behrle v. Olshansky,* 139 F.R.D. 370 (W.D.Ark.1991). In *Behrle,* the district court concluded that an award of costs under Rule 41(d) was appropriate, and then asked what it termed "a more difficult question":

> Does "costs" mean only those items that are traditionally considered to be costs in the American legal system or is the court, in its discretion, authorized to include in

---

**11.** The district court in *Simeone* referred by analogy to the taxable "costs" provisions of 28 U.S.C. § 1920 for its holding that the "costs" provision in Rule 41(d) does not allow recovery of attorneys' fees. *Simeone,* 125 F.R.D. at 155. Later in the opinion, however, the district court conclud-

ed that the types of costs awardable under Rule 41(d) are not limited to those allowable under 28 U.S.C. § 1920. The implications of this seemingly inconsistent analysis have not gone unnoticed by other courts. *See Behrle v. Olshansky,* 139 F.R.D. 370, 374 (W.D.Ark.1991).

"costs" attorney's fees reasonably incurred?

*Id.* at 373. The district court answered that question in the affirmative, noting that Rule 41(d) allows a court to award costs "as it may deem proper," while application of Rule 54(d) (covering costs to the prevailing party) involves little discretion and provides for automatic calculation of costs by the clerk according to the provisions of 28 U.S.C. § 1920. *Id.* at 374. Thus, the court concluded that the Rule 41(d) scope of costs is broader than the scope of costs contemplated by Rule 54(d). *Id.; but see Anders,* 1995 WL 784923 164 F.R.D. 383 (importing Rule 68 standard for "costs" to Rule 41(d) and concluding that attorneys' fees are not consistently available under Rule 41(d)).

There is some basis for the theory that Rule 41(d) itself contains a grant of authority for awards of attorneys' fees as part of costs. The Ninth Circuit has recognized that the Federal Rules of Civil Procedure are approved by Congress and thus are sufficient to constitute a form of statutory authorization for fee awards. *See Zambrano,* 885 F.2d at 1481 n. 26. The Supreme Court has recently confirmed that "[t]he absence of specific reference to attorney's fees is not dispositive if the statute otherwise evinces an intent to provide for such fees." *Key Tronic Corp. v. United States,* 511 U.S. ——, 114 S.Ct. 1960, 1965, 128 L.Ed.2d 797 (1994). Thus, judicial interpretation is appropriate to determine whether Congress has explicitly or implicitly authorized an award of attorneys' fees under Rule 41(d). *Cf. id.* at ——, 114 S.Ct. at 1965 (examining the language and structure of CERCLA).

There are indications that the lack of a specific mention of "attorneys' fees" in Rule 41(d) does not make such expenses nonrecoverable. The term "costs" as used in the Federal Rules is a variable one, with different meanings in different contexts. In Rule 54(d)(1), for example, the description of taxable costs is entitled "Costs Other than Attorneys' Fees," suggesting that the term used without modification may encompass both taxable costs and attorneys' fees. The term "costs" in Rule 68 has been interpreted to include attorneys' fees where the substantive statute sued under also defines "costs" to include attorneys' fees.[12] *Marek v. Chesny,* 473 U.S. 1, 9, 105 S.Ct. 3012, 3016, 87 L.Ed.2d 1 (1985). Rule 41(a)(2) mentions neither "costs" nor "attorneys' fees," and speaks only of "conditions" that a court may impose as it deems proper. Fed.R.Civ.P. 41(a)(2). Yet, as noted above, the Ninth Circuit, among others, has consistently interpreted that provision to permit a federal court to impose a requirement of payment of a defendant's attorneys' fees as a condition to voluntary dismissal. *E.g., Stevedoring Services,* 889 F.2d 919; *Koch,* 8 F.3d at 652; *In re Lowenschuss,* 67 F.3d 1394, 1401 n. 5 (9th Cir.1995); *LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601, 603 (5th Cir.1976); *Cauley,* 754 F.2d at 771. It seems consistent with the overall purpose of Rule 41, therefore, to understand the term "costs" in Rule 41(d) as a means to designate recovery of litigation-related expenditures as the only "condition" that a district court has the discretion to impose in situations where Rule 41(d) applies, rather than as a limit on the nature of expenses recoverable.[13]

Despite the substantial case law suggesting that attorneys' fees are awardable under Rules 41(a)(2) and Rule 41(d), there is a puzzling lack of discussion in the cases of the theoretical underpinnings for such an award under either provision, given the American Rule articulated in *Alyeska.* One possible explanation for the silence is that courts addressing the issue have implicitly recognized that Rule 41(d), and Rule 41(a)(2) in cases

---

**12.** Federal Rule of Civil Procedure 68 provides that a party not accepting a settlement offer may not recover "costs" incurred after the making of the offer if the final judgment obtained is not more favorable than the offer. Fed.R.Civ.P. 68.

**13.** Examples of "conditions" other than costs that a district court may impose on dismissal under Rule 41(a)(2) are: production of certain documents, *Eaddy v. Little,* 234 F.Supp. 377

(E.D.S.C.1964); covenanting not to sue, *Goldlawr, Inc. v. Shubert,* 32 F.R.D. 467 (S.D.N.Y. 1962); producing witnesses at trial, *Stevenson v. United States,* 197 F.Supp. 355 (M.D.Tenn.1961); or simply accepting dismissal with prejudice. Such terms are meant to reduce inconvenience to the defendant. *LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601, 603 (5th Cir.1976).

where voluntary dismissal is sought in order to commence a subsequent action, are simply codifications of the "bad faith" or "abusive litigation" exception to the *Alyeska* rule. *See* Rochelle Dreyfuss, *Promoting the Vindication of Civil Rights Through the Attorney's Fees Award Act*, 80 Colum.L.Rev. 346, 349 n. 22 (1980) (stating that Rule 41(d) "partially codified" the bad faith exception to the American Rule). Under this conception, Rule 41(d)'s requirement for payment of "costs" by a plaintiff who dismisses an action and then brings the same action again evinces a legislative presumption that such conduct is abusive *per se*.[14] Certainly, the purposes of both Rule 41(d) and the "bad faith" exception to the American Rule are the same, *i.e.*, to compensate a party who has incurred unnecessary expenditures because of an opponent's vexatious conduct during the course of litigation. *See* Jane P. Mallor, *Punitive Attorneys' Fees for Abuses of the Judicial System*, 61 N.C.L.Rev. 613, 644 (1983). It is difficult to discern why Rule 41(d) would be necessary if the conduct it addresses were not presumptively abusive. Further, if Rule 41(d)'s purpose is to prevent undue prejudice to a defendant from unnecessary or vexatious litigation, there does not seem to be a clear reason why Rule 41(d) would provide only for an award of costs

*exclusive* of attorneys' fees, since the typical defendant cannot adequately defend a case without incurring such fees.

■ The fact that Rule 41(a)(2) has been a basis to impose fee award "conditions" lends support to the proposition that Rule 41(d) "costs" awards should also include attorneys' fees. Given that the purpose of Rule 41(d) is to discourage indiscriminate and vexatious litigation and unnecessary expenditures by defending parties, it would be inconsistent to conclude that a court has discretion to condition Rule 41(a)(2) voluntary dismissal without prejudice on payment of attorneys' fees, but that a court does *not* have discretion to exact the same payment from a plaintiff who has noticed a Rule 41(a)(1) dismissal in a previous case. In either situation, the plaintiff has required the defendant to incur expenses that may be substantial. It would be anomalous to require the plaintiff to internalize the full costs of its conduct in one context but not the other.[15]

The hardship imposed in the absence of a standard consistent between Rules 41(a)(2) and 41(d) would be especially apparent where, as here, the defendant has undertaken to file a lengthy motion to dismiss. In

**14.** This presumption would explain why Rule 41(d) does not explicitly require a determination of subjective "bad faith," and instead leaves the decision whether to impose costs and a stay in the judge's discretion in light of the surrounding circumstances. The presumption can be rebutted where a plaintiff has a persuasive explanation for his litigative conduct, or where justice so requires. *See e.g., Zucker v. Katz,* 708 F.Supp. 525, 539 (S.D.N.Y.1989) (noting that courts may refuse to award costs under 41(d) where plaintiff offers a "good reason for the dismissal of the prior action or [where] the plaintiff is financially unable to pay the costs."); *Wahl v. Wichita,* 701 F.Supp. 1530 (D.Kan.1988) (refusing to award Rule 41(d) costs where plaintiff dismissed previous state action because state supreme court decision issued after initiation of action affected viability of plaintiff's state claims); *Bellamy v. Jones,* 600 F.Supp. 150 (E.D.Ark.1985) (refusing to impose 41(d) stay pending plaintiff's payment of previously-assessed costs because of plaintiff's inability to pay); *Gregory v. Dimock,* 286 F.2d 717 (2d Cir.1961) (refusing to stay action pending payment of previously-awarded costs where defendant's own errors had enhanced expenses and where plaintiff's age and financial status

made imposition of a stay tantamount to a foreclosure of access to the federal courts).

**15.** The fact that a plaintiff can unilaterally terminate his action under Rule 41(a)(1) does not mean that he cannot be held accountable for what occurs in that action. A plaintiff cannot escape sanctions for frivolous filings under Rule 11, for example, simply because he has noticed Rule 41(a)(1) dismissal before a summary judgment or answer has been filed. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 397–98, 110 S.Ct. 2447, 2456–57, 110 L.Ed.2d 359 (1990). By analogy, it makes sense that a party can not avoid the imposition of costs in a second action under Rule 41(d) simply because it has noticed a Rule 41(a)(1) dismissal of its claims in the first action before filing of a summary judgment motion or answer. In either case, the potential for abusive litigation exists. As the Supreme Court has recognized, the purpose of the Rule 41 provisions regarding voluntary dismissal without prejudice is to "curb abuses of the judicial system," and the policies behind Rule 41 are "completely compatible" with the policies of other Federal Rules whose violation may bring sanctions, like Rule 11. *Id.* at 397.

such a case, the court hearing the first action does not have an opportunity to prevent possible prejudice to the defendant by conditioning dismissal on payment of costs and fees under Rule 41(a)(2). *See Carter,* 547 F.2d 258. Rule 41(d) permits the court hearing the second action to step in and assume that role by preventing the second litigation from proceeding until payment of costs and fees is made. *Cf. White v. Telelect, Inc.,* 109 F.R.D. 655 (S.D.Miss.1986) (holding that only where first court could have conditioned dismissal on costs award under Rule 41(a)(2) is there no need for second court to employ Rule 41(d)). Proper application of Rule 41(d) as set forth above will eliminate the risk that a defendant may be compensated for expenses that may yield continuing utility in the second litigation.

For the foregoing reasons, it is the decision of the Court that defendants are entitled to both expenses and attorneys' fees that are reasonably incurred and that will not contribute toward defendants' defense in the present case.

## C. *The Appropriate Amount of Costs*

■ Defendants are seeking a total amount in costs and fees of $54,786.91. This consists of: $42,511.00 in legal fees for July, August, and September, 1995; $3,876.60 in various disbursements and expenses; and $8,399.31 in legal fees for Mexican counsel, Berdeja y Asociados. Esquivel seeks to deduct from this total: $11,009 in legal fees for July devoted to either the merits of the case, settlement, or the New York state court action still pending; $1,173 in legal fees for August devoted to the same tasks; and $8,399.31 in legal fees for Mexican counsel on the issue of the appropriateness of Mexico as a forum for this action. The total proposed reduction is $20,581.31, which would yield an award of $34,205.60.

■ Upon review of Esquivel's itemized objections, it appears that the proposed reductions are appropriate, although not in the amounts requested. As defendants point out, Esquivel has made specific objections to items that are not marked on defendants' billing records with a double asterisk (**), items for which reimbursement is not sought.

The proper reductions should therefore be in the amount of $5,231.00. In addition, Esquivel is also entitled to a reduction for the fees paid to Mexican counsel on the issue of the appropriateness of Mexico as a forum. Defendants contend in their reply that they will not be asserting in this action that Mexico is a more appropriate forum, since they are in the process of commencing an action in Mexico. As defendants have not presented proof that such an action exists, however, the Court cannot say that this expenditure has no potential for future usefulness. In addition, the Court cannot award fees for the work of Mexican counsel because that fee request is not itemized, and the Court has no way to assess whether the expenditures were reasonably or necessarily incurred. With these two reductions, the total fees would be: $41,156.60.

The Court notes that defendants retained five attorneys for work on the case: Stebbings, Elliott, Gibson–David, Harnett, and Gilioli. Given that the Southern District action never progressed beyond the filing of a motion to dismiss, this amount seems excessive. In addition, defendants have failed to note explicitly the billing rates for their attorneys. Based on the Court's calculations, these rates work out to: $310.00/hr. (Stebbings); $150.00/hr. (Elliott); $100.00/hr. (Gibson–David); $270.00/hr. (Harnett); and $250.00/hr. (Gilioli). Defendants present no evidence that these billing rates are reasonable or consistent with comparable legal services in the New York area other than the declaration statement of defendants' counsel to that effect. In addition, defendants provide no description of the experience or skills of the attorneys involved so that the Court can discern why one attorney should bill at $310.00/hr. while another should receive $100.00/hr.

In addition, the Court notes that the issues involved in the preparation of the motion to dismiss in the Southern District action were not complex. Although the brief was lengthy, it involved mainly a straightforward application of federal and New York law governing personal jurisdiction, choice-of-law, and venue to the particular facts of the case. It is true that costs reasonably in-

curred for work on these issues is compensable, since it will not be useful in the California action. However, the quantity of work must be reasonable in relation to the tasks involved.

 Included in defendants' costs request are various disbursements. Defendants are entitled under Rule 41(d) to disbursements for, *inter alia*, computerized legal research, messengers, express delivery, duplication, and telephone charges. *Zucker*, 1990 WL 20171. However, the requests for disbursements made by defendants here are not individually itemized. Instead, defendants request lump sums of $1,799.22 for "Telephone, Facsimile Lexis Computer Legal Research Charges; Photocopying Expenses; Messenger, Federal Express, Evening Taxi and Meal Charges," in July and August, and $1,137.23 for "Telephone, Facsimile, Lexis Computer Legal Research Charges, Secretarial Overtime Charges, Photocopying Expenses, [and] Federal Express Charges" for September. There is no way to assess whether any of these expenses were reasonably or necessarily incurred, or whether they will be of continuing usefulness to defendants in the instant action.

A number of factors militate in favor of a strict percentage reduction of the amount requested in this case. First, there is the likelihood of duplicative labor inherent in having five attorneys work on a single case. Second, there are the extremely high billing rates associated with some attorneys on the case, which are unsupported by any evidence. Third, there is the fact that the motion to dismiss neither presented unusually weighty issues nor called for extensive discovery. Fourth, plaintiff's expense requests are vague. The Court simply cannot agree that an expenditure of the magnitude sought by defendants is appropriate to compensate a defendant for having to respond to a complaint with a routine motion to dismiss. The Court finds a percentage reduction of fifty percent of the reduced total to be appropriate to account for its concerns in this area. This results in a final costs award of $20,578.30.

D. *Stay of the Proceedings*

The Court has discretion to order a stay of the instant action pending plaintiff's payment of the costs and fees imposed under Rule 41(d). Fed.R.Civ.P. 41(d). In this case, Esquivel has not represented that she would be unable to pay an award of costs, nor has she asserted that she would be harmed in any way by a stay of the proceedings. The Court therefore finds a stay appropriate.

### III. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for costs in the amount of $20,578.30 and orders that all proceedings in the instant action be stayed pending payment by plaintiff to defendants.

IT IS SO ORDERED.